**Henry Charles COOKS, Petitioner-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee.**

No. 71-3451

Summary Calendar.*

United States Court of Appeals, Fifth Circuit.

June 8, 1972.

* ■ Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

Henry Charles Cooks, pro se.

Donald E. Walter, U. S. Atty., Paul Lynch, Asst. U. S. Atty., Shreveport, La., for respondent-appellee.

Before JOHN R. BROWN, Chief Judge, and GOLDBERG and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

By § 2255 Motion to Vacate Petitioner here challenges his 1971 conviction for transporting forged securities in interstate commerce. Finding that on this record the guilty plea which produced the conviction was neither knowing nor voluntary and that the indigent defendant did not receive effective assistance from his court-appointed counsel, we reverse the District Court's hearingless denial of § 2255 post-conviction relief.

Defendant, a virtual illiterate with a minimal, sixth-grade education, was charged on a facially defective six-count indictment. Count I of the indictment accused the defendant of transporting a specified forged American Express Money Order across state lines, from Houston, Texas to Minden, Louisiana, in violation of 18 U.S.C.A. § 2314. Counts II through VI charged the defendant with aiding and abetting the transportation in interstate commerce of five other specified forged American Express Orders on the same date also in violation of 18 U.S.C.A. § 2314. Clearly the indictment was fatally infirm. A single trip across state lines can result in only one criminal charge of transporting forged securities in interstate commerce. Bell v. United States, 1955, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905; Castle v. United States, 1961, 368 U.S. 13, 82 S.Ct. 123, 7 L.Ed.2d 75, rev'g. Castle v. United States, 5 Cir., 1968, 287 F.2d 657.

Notwithstanding the obvious inefficacy of the indictment,[1] Defendant was ad-

---

1. Defendant does not challenge the legality or validity of Count I of the indictment as such. Of course, if he did, such an attack would probably be barred by the familiar rule that a knowing and voluntary plea of guilty waives all non-jurisdictional defects, including errors in the indictment to which he pleaded guilty. Williams v. Wainwright, 5 Cir., 1969, 415 F.2d 1136; United States v. Rook, 7 Cir., 1970, 424 F.2d 403, cert. denied, 398 U.S. 966, 90 S.Ct. 2180, 21 L.Ed.2d 550; Maddox v. Sigler, D.Neb., 1971, 325

vised by court-appointed counsel that should he go to trial on the indictment, he would face a maximum sentence of up to sixty years—ten years on each count. Instead of risking such an extended incarceration, defense counsel advised Defendant to accept a "plea bargain" which had been negotiated with the Government's Attorney—if Defendant would plead guilty to Count I of the indictment, and face a maximum penalty of ten years in prison, the Government would move to dismiss the other five (unenforceable) counts. The Defendant quite understandably accepted the deal.

▮▮ While the good faith errors of appointed counsel are normally insufficient to justify granting a motion to vacate sentence,[2] significant misleading statements of counsel can rise to a level of denial of due process of law and result in a vitiation of the judicial proceeding because of ineffective assistance of counsel. See Arrastia v. United States, 5 Cir., 1972, 455 F.2d 736 and cases cited at 740. Where counsel has induced defendant to plead guilty on the *patently erroneous* advice that if he does not do so he may be subject to a sentence six times more severe than that which the law would really allow, the proceeding surely fits the mold we describe as a "farce and a mockery of justice." Busby v. Holman, 5 Cir., 1966, 356 F.2d 75, 79; Williams v. Beto, 5 Cir., 1965, 354 F.2d 698, 704; Bell v. Alabama, 5 Cir., 1966, 367 F.2d 243, 247.

▮ Of course, counsel's inability to foresee *future* pronouncements which will dispossess the court of power to impose a particular sentence which is presently thought viable does not render counsel's representation ineffective, nor does a plea later become invalid because it is predicated upon advice correct at the time, but later proved to have been erroneous by reason of *subsequent* decisions. Brady v. United States, 1970, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747; Parker v. North Carolina, 1970, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785; North Carolina v. Alford, 1970, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162. Clairvoyance is not a required attribute of effective representation.

But although counsel need not be a fortune teller, he must be a reasonably competent legal historian. Though he need not see into the future, he must reasonably recall (or at least research) the past—and today the past surely encompasses the present. But for this case the past is enough since the controlling Supreme Court precedents which demonstrate unequivocally that defendant could not possibly receive a total s̄entence of 60 years on the indictment were decided more than a decade before this defendant pleaded guilty. Effective counsel should have been aware of and advised the defendant of, at a minimum, the maximum—that is, the maximum penalty as the law was then understood.[3]

F.Supp. 978; Cantrell v. United States, 8 Cir., 1969, 413 F.2d 629.

Rather, Defendant's claim is that counsel grossly misinformed him as to the legal effect of Counts II through VI of the indictment (which counts were later dismissed on motion of the Government) and that ill-advice provoked the plea of guilty to Count I.

2. Rosenbaum v. United States, 5 Cir., 1969, 413 F.2d 298; Moore v. United States, 5 Cir., 1964, 334 F.2d 25; Popeko v. United States, 5 Cir., 1961, 294 F.2d 168; Colson v. Smith, 5 Cir., 1971, 438 F.2d 1075.

3. The en banc decision of this Court in United States v. Woodall, 5 Cir., 1971,

438 F.2d 1317, 1322, cert. denied, 403 U.S. 933, 91 S.Ct. 2262, 29 L.Ed.2d 712, is not to the contrary for two reasons. In the first place, in *Woodall* the attorney had apparently *correctly* advised the defendant that a pyramiding of sentences under § 2113(a) and § 2113(d) of the National Bank Robbery Act was probably unlawful, although the Trial Court probably would not accept this reading and would probably sentence the defendant to a harsher term than the law would allow. This advice was eminently accurate and enabled the defendant to intelligently evaluate his full circumstances and make an informed decision. In the present case, the advice had an opposite effect. Rather than clarifying Defend-

■ Moreover, in addition to not having adequately advised his client of the possible punishment under the indictment, there is affirmative evidence in the record that counsel did not even inform the defendant regarding the nature of the offenses charged—not even of the single count to which the defendant pleaded guilty. Count I of the indictment specifically charged that "on or about November 20, 1970, * * * [defendant] did *transport and caused to be transported* in interstate commerce from Houston, Texas, to Minden, Louisiana, a falsely made and forged security * * * [to wit, one American Express Money Order in the amount of $140.75]."

During the guilty plea hearing the only attempt made by the Trial Court to ascertain whether or not there was a factual basis for acceptance of the plea [4] produced the following colloquy:

THE COURT: Now, Mr. Cooks, do you understand what Count I of the Indictment says you did?

MR. COOKS: I Do.

THE COURT: What did it say that you did?

MR. COOKS: Cashed a Money Order for—

THE COURT: For $147 and bearing the name James Clark, Sr.

MR. COOKS: Right.

ant's predicament, it substantially murkied the waters, tainting them with unfounded considerations for the defendant to evaluate in making his decision.

Secondly, the erroneous advice in *Woodall*, to the extent it may have been erroneous, related to the maximum penalty which awaited Defendant's *plea of guilty*. Here the mistaken advice related to the maximum penalty which awaited defendant's trial by jury, should he refuse to enter a plea of guilty.

In *Woodall*, since the defendant, by pleading guilty under the misapprehension that the consequences of the plea could be more severe than in fact they were, had evidenced a voluntary acceptance of the greater risk, the fact that the consequences of the plea could not be so dire as anticipated would not necessarily render the plea involuntary. See also Barton and Parry v. United States,

The indictment did not charge the defendant with *cashing* a forged Money Order, it charged him with *transporting* it across state lines. Thus there is absolutely nothing in the record to demonstrate that the defendant had any understanding of the nature of the offense charged in the indictment, the factual basis for it, or, as discussed above, of the possible criminal sanctions of that conduct.

■ These are not only errors of court-appointed counsel. For at this point the failure of the Trial Court to take effective action puts the Judge in error also. As is so often true this stems from the failure of counsel, upon whom a busy Judge must so rely, to adequately advise the Court. In this episode, the Government counsel is equally faulted for not having corrected the Judge's summary of the crime charged. But no matter how inadvertent, it was for the Judge since the responsibility for "assuring that a defendant does not plead guilty except with a full understanding of the charges against him and the possible consequences of his plea was at the heart of [the] recent decisions in McCarthy v. United States, *supra*, and Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L.Ed.2d 274 (1969)." Brady v. United States, 1970, 397 U.S. 742, 748, n. 6, 90 S.Ct. 1463, 1469, 25 L. Ed.2d 747, 756, n. 6.

5 Cir., 1972, 458 F.2d 537. But here the erroneous advice does not involve an exaggeration of the possible *detriments* of the plea. Rather it presented an unfounded overstatement of the potential *benefits* of pleading guilty. Contrary to *Woodall*, where the defendant thought he was exposing himself to a greater risk by pleading guilty, the misinformation here incorrectly led this defendant to believe that he was *minimizing* his risk exposure by pleading guilty instead of facing a jury trial.

4. F.R.Crim.P. 11 requires that before accepting a plea of guilty, the Trial Court affirmatively persuade himself *with record evidence* (see McCarthy v. United States, 1969, 394 U.S. 459, 89 S.Ct. 1166, 22 L. Ed.2d 418) that there is a factual basis for accepting the plea. This requirement is usually met by the Court hearing testi-

But whether the responsibility here be put on the Trial Court, on appointed counsel, or both, the result is the same. The guilty plea was invalid. The conviction must be vacated and the defendant afforded the opportunity to plead anew. *McCarthy, supra.*

Reversed and remanded with instructions.

---

mony of a witness (cf. North Carolina v. Alford, *supra*) ; United States v. Frontero, 5 Cir., 1971, 452 F.2d 406, or by the Government Attorney relating to the Court the particular tale of the defendant's specific misdeed with sufficient identity of fact, actor and witness. Here

no such procedure was followed, and the *only* record explanation even beginning to provide any facts about what the defendant did for which criminal sanctions are sought to be imposed is the above quoted passage from the transcript.