STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. JAMES NICHOLS, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted July 7, 1975—Decided September 12, 1975.

Before Judges CARTON, ALLCORN and MORGAN.

*Mr. Stanley C. Van Ness,* Public Defender, attorney for appellant (*Mr. David R. Arrajj,* Assistant Deputy Public Defender, of counsel and on the brief).

*Mr. William F. Hyland,* Attorney General of New Jersey, attorney for respondent (*Mr. Peter S. Hamerslag,* Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

MORGAN, J. A. D.  Defendant was indicted, along with co-defendants Lawrence Pierce and William DeShields, Jr. for an armed robbery (*N. J. S. A.* 2A:141–1 and 2A:151–5) which occurred on November 15, 1971, and a first degree murder (*N. J. S. A.* 2A:113–1 and 2) which occurred during the course of the robbery.  Defendant's plea of guilty to the armed robbery charge and *non vult* to the murder count were entered pursuant to an agreement between defendant and the State in which the State offered to recommend concurrent sentences on all charges in exchange for defendant's pleas of guilty and *non vult.*  The promised recommendation was made, honored by the trial judge and defendant was sentenced to concurrent terms of 10 to 12 years for robbery, 2 to 3 years for being armed in the commission of the robbery, and life imprisonment on the murder charge.

On direct appeal, the Appellate Division, in an unreported opinion, held that the *non vult* plea was to a felony murder and the lesser included offenses of robbery and armed robbery merged therein.  Accordingly, the conviction for murder was affirmed.  The armed robbery conviction was vacated subject, however, to leave given defendant

to apply to the trial court for a withdrawal of the *non vult* plea to the murder count of the indictment and the entry of a not guilty plea thereto. In the event defendant's application was successful, then the entire plea bargain would be set aside and what was said concerning merger of the robbery and armed robbery offenses would not apply. In such an event (success in having the entire plea bargain set aside), defendant would be permitted to withdraw his *non vult* plea to the murder charge and to plead again to all counts of the indictment, including those relating to robbery and armed robbery.

Pursuant to the leave afforded him, defendant did apply to the trial judge for leave to withdraw his plea of *non vult* to murder. He contended that all participants to the plea, judge, prosecutor and counsel, had been unaware that the armed robbery conviction would merge in the murder conviction and that, consequently, defendant could not be sentenced, as he feared, to consecutive terms of life imprisonment and a custodial term for the armed robbery charge. The maximum term which could have been imposed was life imprisonment, and had defendant been made aware of this circumstance, he would not have pleaded *non vult*, since he had nothing to gain by entry of the plea. The instructions of the Appellate Division, in the event defendant made an application for withdrawal of his *non vult* plea, were for the trial judge to conduct a hearing to determine (1) whether the plea to murder, in conjunction with the pleas to robbery and armed robbery, was entered pursuant to a meaningful bargain with a full appreciation by defendant of the legal consequences, and (2) whether the State would be prejudiced by permitting a withdrawal of the plea to murder.

In accordance with these instructions a testimonial hearing on defendant's application was held during which defendant and the attorney who represented him at the plea and at the negotiations preceding the plea both testified that the primary inducement to plead was defendant's con-

cern as to a custodial term for the armed robbery conviction consecutive to a life term for murder. It was that concern which motivated the bargain for concurrent sentences in exchange for the plea.[1] At the conclusion of the hearing the trial judge found it unnecessary to make a finding concerning whether the plea to murder was entered pursuant to a "meaningful bargain with a full appreciation by the defendant of the legal consequences" because he concluded that the State would be prejudiced by permitting a withdrawal of the plea to murder. Accordingly, the motion to withdraw the plea was denied and defendant appeals.

In its opinion on the direct appeal the Appellate Division entertained "no doubt as to his (defendant's) guilt of all of the charges." A review of the factual basis for the plea defendant now seeks to have vacated persuades us to agree with that conclusion. Defendant admitted to the trial judge in connection with his plea that he was at the scene of the robbery on November 15, 1971 with Lawrence Pierce and William DeShields. "We were there to commit robbery." They had come from Salem and defendant had first become aware that Pierce had a gun after they had already arrived at the scene and about five minutes before the robbery occurred. "As we entered the store, like I stood by the door and, you know, Pierce asked him to, he wanted to buy some cold cuts, and as he was getting the cold cuts and on his way back to the counter, Pierce went around the counter * * *. And he said: This is a stickup, you know. And Mr. Andras, his back was to Pierce. And as he turned around, he (Pierce) fired." Defendant was standing by the door as a lookout, about 10 or 15 feet from where Andras

---

[1] Defendant's attorney testified that he informed the defendant that even if the plea bargain was made on the basis of a life term, he would nonetheless attempt to induce the court to impose less than a life sentence since a co-defendant had been promised a less severe sentence. This was, in fact, attempted at sentencing.

was shot. After being shot, Andras "like he staggered to the left and he fell. And I ran over to him and looked at him. And I asked Pierce why he did it. He didn't have to do that, I told him come on, let's go." They left after taking money from the register which was later divided among the three of them. Much of the same material was repeated by defendant immediately before the sentence was imposed. Even on this appeal from the denial of his application to withdraw his *non vult* plea to murder, defendant does not assert his innocence.

The Appellate Division further entertained "no doubt" but that the pleas were "voluntary, intelligently and understandingly made; that defendant fully understood their consequences including the life imprisonment sentence that the court would probably impose; and that he knowingly waived his right to jury trial and was satisfied with this counsel's preparation and representation." Here, again, a review of the plea and colloquy preceding imposition of sentence provides irrefutable support to the conclusion that defendant was fully aware that the trial judge would "probably" impose a term of life imprisonment.

This is not a case in which a trial judge failed to advise defendant of the maximum sentence which could be imposed and defendant claims surprise at the length of the custodial sentence ultimately imposed. See *State v. Smith*, 109 *N. J. Super.* 9, 12 (App. Div. 1970), certif. den. 56 *N. J.* 473 (1970)[2]. Here, defendant is contending that the trial court and counsel incorrectly advised him that he could be sentenced to a longer period of confinement than was actually the case. Had he known that the maximum term to which he could have been sentenced was life imprisonment, he would not have pleaded guilty. We have concluded

---

[2] In *State v. Smith*, the trial judge's denial of defendant's motion, interposed after sentence, to withdraw his plea was affirmed despite the judge's failure to specify the maximum sentence which could be imposed.

that defendant's contentions in these circumstances lacks merit.

■ The standard governing disposition of motions to withdraw pleas of guilty or *non vult* following imposition of sentence is set forth in *R.* 3:21–1, which provides:

A motion to withdraw a plea of guilty or non vult shall be made before sentencing, but the court may permit it to be made thereafter to correct a manifest injustice.

It is defendant who bears the "strict" burden of proving that a withdrawal of a plea of *non vult* and a trial of his guilt is necessary to correct a manifest injustice. The "strict" burden imposed upon a defendant is to establish "by a fair preponderance of the proofs, not just a doubt but a solid affirmative basis dictating the exercise of judicial discretion in his favor." *State v. Daniels,* 38 *N. J.* 242, 250 (1962), *cert.* den. 374 *U. S.* 837, 83 S. Ct. 1885, 10 L. Ed. 2d 1057 (1963).

■ In exercising its discretion as to whether to vacate a plea of guilty or *non vult,* the trial judge is required to carefully consider and evaluate not only the submitted materials relevant to the manner in which the plea was entered but also material bearing on the "related pertinent issues," such as guilt of defendant and prejudice to the State. *State v. Tyson,* 43 *N. J.* 411 (1964), *cert.* den. 380 *U. S.* 987, 85 *S. Ct.* 1359, 14 *L. Ed.* 2d 279 (1965); *State v. Deutsch,* 34 *N. J.* 190, 201 (1961); *State v. Johnson,* 131 *N. J. Super.* 252, 256 (App. Div. 1974). In this case defendant's guilt of the offenses charged was so clearly established that he does not even bother to assert his innocence in this appeal. Not only did he admit his participation in open court during entry of the plea and again before sentencing, but the State had his signed confession and the confession of his codefendant clearly implicating him as a participant in the armed robbery which resulted in the murder. Defendant is, in substance, asking this court to require the State to prove his admitted guilt of the offenses, apparently in the

hope that if the State fails, he will need serve no sentence at all.

Such relief is, in our view, well beyond the bounds of "fairness" to which defendant can legitimately claim to be entitled, particularly in the circumstances of this case. The plea was taken on May 8, 1972 and defendant was sentenced on June 9, 1972. The application to withdraw his plea was heard and decided on March 8, 1974 and the new trial which defendant seeks would first take place toward the end of 1975, over three years after entry of the plea. Aside from the fact that witnesses' memory of the events of November 15, 1971, the date of the robbery-murder, would be dimmed by the passage of an approximately four-year period of time, the State no longer has any means of insuring the testimony of defendant's self-confessed accomplice, William DeShields, who has already served his sentence and is presently released on parole. Although the State has protection against DeShields' actual perjury, it has no way of dealing with convenient lapses of memory, on the part of one who no longer has anything to gain by testifying fully and completely as to matters which can only serve to convict his friend and former accomplice. Defendant's in-court confession made in connection with his plea would not be evidential at the trial. *State v. Boone,* 66 *N. J.* 38 (1974). DeShields' confession inculpating defendant would not be admissible except, possibly, for neutralization (but see *Evid. R.* 20), the sole purpose of which is to restore the status prevailing before the witness in question testified upon the particular matters under neutralization. *State v. Gallicchio,* 44 *N. J.* 540 (1965). The only eyewitness, Andras, the victim, was dead. Hence, the only hard evidence of guilt upon which the State could safely rely at this late date, almost four years after the event, would be defendant's uncorroborated confession. In these circumstances we conclude that the trial judge's finding that the State would be prejudiced by a new trial so far removed from the event to

be tried has substantial support, and this consequent denial of defendant's motion to vacate his *non vult* plea does not constitute a mistaken exercise of discretion.

We perceive nothing unfair, or even suggesting "manifest injustice," in requiring one who has clearly admitted his guilt to a felony murder to serve a sentence he not only knew would probably be imposed as a result of his *non vult* plea, but which he affirmatively bargained for. The motion to vacate the *non vult* plea was properly rejected.

Affirmed.

ALLCORN, J. A. D. (dissenting). The issue in this case is not defendant's guilt or innocence. Were culpability in fact the critical concern, it is difficult to conceive of a situation in which a plea of guilt might be withdrawn, attended as it is by the safeguards imposed by *R.* 3:9–2 and *R.* 3:21–4(b).

Rather than guilt or innocence, the issue is whether an accused may be held to a plea of guilt entered by him in the performance of a plea agreement induced as a result of misinformation supplied him as to the number of charges of which he might be convicted, the maximum sentences to which he would be subject were he convicted and the benefits he might expect to receive in return for the plea. Compare *State v. Thomas*, 61 *N. J.* 314, 320 (1972).

It is undisputed that, prior to entering into the plea agreement, defendant was mistakenly informed that he was subject to conviction not only of felony-murder but of armed robbery, the underlying felony, as well — notwithstanding that the well-settled law of this State was to the contrary. *State v. Mowser*, 92 *N. J. L.* 474 (E. & A. 1919); *State v. Currie*, 41 *N. J.* 531, 536–538 (1964); *State v. Fitzsimmons*, 60 *N. J. Super.* 230 (Cty. Ct. 1960), *cert. den.* 364 *U. S.* 875, 81 *S. Ct.* 120, 5 *L. Ed.* 2d 97 (1960). He was also advised that the maximum terms of incarceration authorized to be imposed were: felony murder, life imprisonment; robbery, 15 years; being armed, 10 years.

In addition he was told that, should he be convicted of all the charges, the sanctions imposed on the underlying felony charges could be made to run consecutively to the sentence on the murder charge and to one another, and that the prosecutor intended to press for consecutive sentences.

Thus misled into believing that he faced a possible maximum sentence of life plus 25 years imprisonment, defendant undertook to plead *non vult* to the murder charge and guilty to the armed robbery charges in return for the undertaking of the prosecutor to recommend to the court a life sentence on the murder charge and that any sentences imposed on the armed robbery charges be made concurrent with the sentence imposed on the murder charge. Both defendant and the State performed their respective undertakings. The judge sentenced defendant to life imprisonment for the murder, and to terms of 10 to 12 years and 2 to 3 years, respectively, on the charges of robbery, while armed, the latter to be served concurrently with the sentence of life imprisonment. On appeal the convictions on the armed robbery charges were vacated; the sentence of life imprisonment for murder was affirmed.

Having negotiated a waiver of his constitutional protections in exchange for what he misconceived to be lenient treatment, defendant instead received the most stringent sentence possible. A plea agreement founded upon such a false premise is no agreement at all, however unintentional the misinformation. Consideration flowed only in one direction — from defendant to the State. There was a complete absence of consideration moving from the State to defendant.

Whatever the disparate views as to the propriety, desirability and effectiveness of plea negotiation, the process has been approved and is in use in a number of jurisdictions, including New Jersey. In all of these jurisdictions it is recognized that scrupulous fairness both to defendant and to the State is basic to the proper administration of plea

negotiation procedures. *Santobello v. New York*, 404 *U. S.* 257, 261, 92 *S. Ct.* 495, 30 *L. Ed.* 2d 427 (1971) ; *State v. Taylor*, 49 *N. J.* 440, 455–456 (1967). "If plea bargaining is to fulfill its intended purpose, it must be conducted fairly on both sides and the results must not disappoint the reasonable expectations of either." *State v. Thomas*, 61 *N. J.* 314, 321 (1972). See *Newman, Convictions: The Determination of Guilt or Innocence Without Trial*, 32–56 (1966) ; Goldstein, "For Harold Lasswell: Some Reflections on Human Dignity, Entrapment, Informed Consent, and the Plea Bargain," 84 *Yale L. J.* 683 (1975) ; *A. B. A. Minimum Standards of Criminal Justice: Pleas of Guilty* (1968), Part III.

There can be little question but that, from the perspective of an accused, the principal purpose (if not the sole end) of plea negotiation is leniency of treatment, whether by sentence concession, charge reductions or charge dismissals. The accused negotiates for concessions acceptable to him which, when agreed upon by both the government and the accused, form the inducement for his undertaking to plead guilty. Where, as here, defendant's negotiations are predicated upon erroneous information as to the maximum sanctions that could be imposed upon conviction (25 years imprisonment in excess of the maximum actually authorized), the leniency of treatment for which he negotiated as the *quid pro quo* of his pleas was illusory indeed.

Had defendant been aware that a conviction on the murder charge would have barred conviction on the armed robbery charges and that, in such event, the maximum sentence of incarceration that could have been imposed was life imprisonment, he would have negotiated for some sentence less than life imprisonment in exchange for his non vult plea. Based as it was on the erroneous information supplied by counsel, the plea agreement in fact negotiated fell far short of fulfilling defendant's reasonable expecta-

tions — then only 21 years of age and without any prior adult criminal record.

Even without regard to the serious question of effective representation by counsel, the waiver by defendant of his constitutional rights to trial, to confront the witnesses against him, and to refrain from self-incrimination, effected by the entry of his pleas, hardly may be said to have been either knowing or intelligent. It was instead the product of misinformation and misunderstanding. Fairness requires that defendant be relieved of his undertaking and the *status quo* be restored by permitting him to withdraw his plea. To do otherwise is to stultify the law and to make the court, prosecutor and defense counsel party to deception (albeit unintentional), unfair to defendant and unacceptable to any system of justice that is truly just. *State v. Thomas, supra; Cooks v. United States,* 461 *F.* 2d 530 (5 Cir. 1972) ; *Moore v. State,* 54 *Ala. App.* 463, 309 *So.* 2d 500 (Ala. Cr. App., 1975). See, generally, Annotation, "Court's duty to advise or admonish accused as to consequences of plea of guilty, or to determine that he is advised thereof," 97 *A. L. R.* 2d 549 (1964). Compare *State v. Rhein,* 117 *N. J. Super.* 112 (App. Div. 1971).

Under such circumstances, prejudice or lack of prejudice to the State by withdrawal of the plea is not and should not be a controlling consideration. See *State v. Thomas, supra.*[1] In any event, there would appear to be no prejudice to the State were the plea withdrawn. All of the evidence and witnesses available to the State at the time of the entry of the

---

[1] In *Thomas* the court held the State bound by a plea agreement whereby defendant pleaded guilty to atrocious assault and battery some three months before the victim died from injuries received from the assault, which occurred during the theft of her purse — and dismissed the subsequent murder indictment notwithstanding there was no bar to the murder indictment by reason of double jeopardy and despite the circumstanc that, at the time of the plea, defendant was well aware (but the State was unaware) that the death of the victim was both likely and imminent.

pleas are still available. Indeed, the chief of detectives was unable to point to any prejudice other than the loss of "control" over the witness DeShields — a codefendant who, in consideration of a sentence of 8 to 10 years, agreed to testify against this defendant. That claim of prejudice is speculative at best. It presupposes that the witness might be uncooperative or might have a memory lapse even though there had been no communication with him, and disregards the normal "control" that the State has over any witness — here reinforced by the signed statement of DeShields, as well as the transcript of the statements made by him on the occasions of his plea and his sentencing.

Be this as it may and even assuming that prejudice to the State would result from withdrawal of the plea, whatever that prejudice may be it is the product solely of the passage of time. And that lapse of time was occasioned by the delay in discovering that defendant had been misinformed as to matters critical to a knowing and intelligent decision and the delay necessarily incident to these curative proceedings — for which defendant was in no way responsible or chargeable.

For these reasons I would reverse the order of the Law Division and would (1) permit defendant to withdraw his plea of *non vult* to the murder charge, (2) reinstate the charges of robbery, while armed, (3) direct that defendant plead anew to all three charges, and (4) direct that all three charges proceed to trial expeditiously, unless earlier disposed of by plea.