Charles SMITH, Petitioner,

v.

UNITED STATES of America,
Respondent.

No. 75 C 1880.

United States District Court,
E. D. New York.

Sept. 13, 1976.

David G. Trager, U. S. Atty., E.D.N.Y., Brooklyn, N.Y., for respondent; Richard Appleby, Asst. U. S. Atty., Brooklyn, N.Y., of counsel.

Michael A. Young, Legal Aid Society, New York City, for petitioner.

## MEMORANDUM OF DECISION AND ORDER

MISHLER, Chief Judge.

The petitioner moves to vacate the plea of guilty to Count One of the indictment, 72 CR 672, on July 17, 1972, before Judge Orrin G. Judd,[1] and the judgment and commitment made and entered January 23, 1973, sentencing the petitioner to a prison term of ten years.

## THE INDICTMENT

The five-count indictment charged the petitioner with violations of 18 U.S.C. §§ 2114 and 641 (two counts of the indictment charged the petitioner with violations of 18 U.S.C. §§ 111 and 1114, which are not pertinent to this discussion). Count One of the indictment charged the petitioner and his co-defendants with robbing John J. Talton, Jr., of the sum of approximately $5,000, which he had in his custody. Count Two of the indictment charged the petitioner with placing Mr. Talton's life in jeopardy during the commission of the crime charged in Count One.[2] Count Five charged the petitioner and his co-defendants with stealing United States government funds in violation of 18 U.S.C. § 641.[3]

1. Judge Judd, to whom this proceeding was assigned, died on July 7, 1976, and this proceeding was thereupon assigned to the undersigned.

2. Count One charged as follows:
   On or about the 30th day of May, 1972, within the Eastern District of New York, the defendants CHARLES SMITH, HERMAN ROBERTSON, RONALD JOHNSON and A. C. DOYLE did rob John H. Talton, Jr., a person having lawful charge, control and custody of money of the United States, of approximately five thousand dollars ($5,000) of said money which was then in the charge, control and custody of the said John H. Talton, Jr. (Title 18, United States Code, § 2114 and § 2).
   Count Two charged as follows:
   On or about the 30th day of May, 1972, within the Eastern District of New York, the defendants CHARLES SMITH, HERMAN ROBERTSON, DONALD JOHNSON and A. C. DOYLE did rob John H. Talton, Jr., a person having lawful charge, control and custody of

money of the United States, of approximately five thousand dollars ($5,000) of said money which was then in the charge, control and custody of the said John H. Talton, Jr., and the defendants CHARLES SMITH, HERMAN ROBERTSON, RONALD JOHNSON and A. C. DOYLE, in effecting such robbery, did put the life of the said John H. Talton, Jr., in jeopardy by the use of dangerous weapons, to wit, two loaded hand guns (Title 18, United States Code, §§ 2114 and 2).

3. Count Five charged as follows:
   On or about the 30th day of May, 1972, within the Eastern District of New York, the defendants, CHARLES SMITH, HERMAN ROBERTSON, RONALD JOHNSON and A. C. DOYLE wilfully and knowingly did steal approximately five thousand dollars ($5,000) of money of the United States (Title 18, United States Code, § 641 and § 2).

When Smith offered his plea on July 17, 1972, Judge Judd made extensive inquiry to determine that the plea was voluntarily and knowingly made. Judge Judd advised the petitioner on the nature of the charge in Count One as robbing "a person who had custody of United States funds in the amount of about $5,000," and further advised Smith that the offense carried "a potential penalty of imprisonment for not more than ten years." A discussion ensued concerning the possible penalty under Count Two (the twenty-five year count), since the government stated that it would dismiss that count "if the government is satisfied" that Smith cooperated in giving information concerning narcotic dealers and helping to locate one of the co-defendants, A. C. Doyle. Referring to the ten-year count, Judge Judd said, "Mr. Smith, other than the risk of going to jail for twenty-five years, other than that consideration, has anyone forced you to plead guilty?" Smith answered, "No Sir." Smith admitted his complicity in robbing Talton of the sum of approximately $5,000. He stated that he and his three co-defendants had planned to rob Talton who they had believed to be a drug dealer about to make a purchase of narcotics. (It turned out that Talton was a special agent of the Drug Enforcement Agency, acting in an undercover capacity.) The court found that there was a factual basis for the plea and, satisfied that the plea was voluntarily, knowingly, and intelligently made, Judge Judd accepted the plea of guilty to Count One.

Smith was released on bail pending sentencing and became a fugitive. He was arrested and brought before the court for sentencing on January 23, 1973. Petitioner's counsel and the assistant United States attorney both discussed the disposition of "the twenty-five year count" (Count Two). Judge Judd stated, "According to the presentence report he stated that he was not guilty, that he pleaded guilty on the attorney's advice in order to avoid the 25-year sentence" (Tr. 1/23/73, p. 5). The court then invited Smith to move to withdraw his plea of guilty to Count One. The assistant United States attorney relented during the discussion and agreed "to dismiss the 25-year count" if the defendant was ready to be sentenced on Count One. The court indicated that it would not increase the prison term because of the bail jumping offense. Before sentencing the court again invited the petitioner to withdraw his plea, after stating the following:

> The presentence report which I have made available to defendant's counsel and which they have just returned states the offense and states that he pleaded guilty on the advice of his attorney and if convicted he faced 25 years. Of course, as I read the statute, there was a mandatory 25 year sentence if he were convicted of participation in the armed robbery of a Federal agent, and there is going to be a substantial prison sentence and if the defendant wants to withdraw his plea and go to trial now, this is his last opportunity to make that request. I am not sure I would grant such an application because I have heard guilty pleas from the other three defendants in the case, and from all that I have learned I think that a jury would convict this defendant.

(Tr. 1/23/73, p. 17).

Petitioner's application[4] was triggered by the Second Circuit Court of Appeals' decision in United States v. Rivera, 513 F.2d 519 (2d Cir. 1975), and United States v. Reid, 517 F.2d 953 (2d Cir. 1975),[5]

---

4. The petitioner is no longer incarcerated, having been paroled after the completion of one-third of his sentence; he has seven years of parole to complete. Parole status is, of course, "custody" within the meaning of 28 U.S.C. § 2255, permitting motions to vacate a conviction, Wapnick v. United States, 406 F.2d 741, 742 (2d Cir. 1969).

5. Judge Friendly, writing for the Court in both Rivera and Reid, relied on the Solicitor General's concession in United States v. Hanahan, 442 F.2d 649 (7th Cir. 1971), vacated and remanded, 414 U.S. 807, 94 S.Ct. 169, 38 L.Ed.2d 43 (1973), that the legislative history showed that the statute was intended to be limited to postal service offenses. The Ninth Circuit adopted this reasoning in United States v. Fernandez, 497 F.2d 730 (9th Cir. 1974). Judge Mansfield dissented in Reid, holding that the plain reading of the statute was to the contrary and that the court should not be bound by the interpretation of the Solicitor General.

which held that 18 U.S.C. § 2114 is limited to cases having a postal nexus. The dual-pronged attacked leveled at the plea claims (1) that an offense under § 2113 is not alleged and/or is not supported by the facts established during the plea proceeding since the funds in Talton's custody were DEA funds; and (2) that the misinformation based on the mistake of law supplied by Smith's counsel, the prosecutor and the court that a conviction under Count Two would result in a mandatory 25-year term rendered the plea involuntary and void.

## I. THE LACK OF A POSTAL NEXUS

■ The facts admitted by Smith constituted a violation of 18 U.S.C. §§ 641 and 2. This is not a case of a defendant pleading to a charge that does not constitute a federal crime.[6] A miscitation is not a ground for vacating an otherwise valid plea. *United States v. Rivera,* 513 F.2d 519, 533 n. 21 (2d Cir. 1975); *United States v. Calabro,* 467 F.2d 973, 981 (2d Cir. 1972), *cert. denied,* 410 U.S. 926, 93 S.Ct. 1358, 35 L.Ed.2d 587 (1973); *United States v. McKnight,* 253 F.2d 817, 820 (2d Cir. 1958). See F.Cr.P.R. 7(c).

## II. THREAT OF MANDATORY TWEN-TY–FIVE–YEAR TERM LATER FOUND TO BE ERRONEOUS

■ A guilty plea is more than an admission of unlawful conduct. It is a waiver of all the constitutional rights embodied in a right to a fair jury trial. It cannot be sustained unless the record shows it was "made voluntarily after proper advice and with full understanding of the consequences." *Kercheval v. United States,* 274 U.S. 220, 223, 47 S.Ct. 582, 583, 71 L.Ed. 1009 (1927); *Machibroda v. United States,* 368 U.S. 487, 493, 82 S.Ct. 510, 513, 7 L.Ed.2d 473 (1962); *Fontaine v. United*

States, 411 U.S. 213, 215, 93 S.Ct. 1461, 1462, 36 L.Ed.2d 169 (1973).

In *McCarthy v. United States,* 384 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1959), the Court said:

Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void. Moreover, because a guilty plea is an admission of all the elements of a formal criminal charge, it cannot be truly voluntary unless the defendant possesses an understanding of the law in relation to the facts.

At the time Smith offered his plea, the statutory interpretation of § 2114 comported with the advice of Smith's counsel, the prosecutor's statements and the pronouncement of the court with respect to the certainty of a 25-year mandatory term in the event of a conviction on Count Two. The record sustains Smith's claim that he pleaded to Count One to avoid the harshness of the penalty in the likely event of conviction on Count Two.

The question presented by this application is whether a plea induced by fear of a mandatory 25 year prison term, which turned out to be baseless through subsequent decisional law, renders a plea involuntary and therefore void.

■ A plea is not rendered invalid because it is offered to avoid a heavier penalty, *North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); *Farmer v. Caldwell,* 476 F.2d 22 (5th Cir.), *cert. denied,* 414 U.S. 868, 94 S.Ct. 178, 38 L.Ed.2d 117 (1973); *Moore v. Swenson,* 487 F.2d 1020 (8th Cir. 1973); *Gaxiola v. United States,* 481 F.2d 383 (9th Cir. 1973). A plea, however, based on the erroneous advice of counsel concerning maximum punishment cannot stand. *Hammond v. United States,* 528 F.2d 15 (4th Cir. 1975); *Cooks v. United*

---

**6.** In *Liptscher v. United States* (S.D.N.Y. April 1, 1975, Docket No. 74 C 4444) Judge Frankel, vacating a plea on a § 2255 petition, held that a charge of conspiracy under 18 U.S.C. § 2114 involving a larcenous scheme lacking a postal nexus did not constitute a federal crime.

*States,* 461 F.2d 530 (5th Cir. 1972).[7] The court in *Cooks, supra* at 532, noted:

Of course, counsel's inability to foresee *future* pronouncements which will dispossess the court of power to impose a particular sentence which is presently thought viable does not render counsel's representation ineffective, nor does a plea later become invalid because it is predicated upon advice correct at the time, but later proved to be erroneous by reason of *subsequent* decisions. (citations omitted).

■ Smith cannot prevail on a retrospective assessment of his lawyer's advice, or the prosecutor's and court's statement of the law. The claimed coercive factor was the threat of severe punishment for conduct which, as the result of later decisions, could not have been the basis for a conviction on Count Two. The claim appears to be novel. An analysis of cases dealing with post-conviction changes in the law is helpful.

The *Brady* trilogy of cases provides a starting point. In *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), the petitioner was charged with kidnapping in violation of 18 U.S.C. § 1201(a). A provision of this statute allowed the jury to recommend the maximum penalty of death if the kidnapping victim had been injured by the defendant. Brady, whose victim had been harmed, pled guilty to the kidnapping charge rather than risk the death penalty in a jury trial. Subsequently, in *United States v. Jackson,* 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138 (1968), the Supreme Court ruled that the death penalty section of 1201(a) imposed an impermissible burden on the exercise of the right to a jury trial. In a petition brought under 28 U.S.C. § 2255, Brady argued that his plea of guilty had been coerced by the threat of the death penalty. The Court denied the petition, holding that the plea was intelligent and voluntary:

[A]bsent misrepresentation or other impermissible conduct by state agents . . . a voluntary plea of guilty intelligently made in the light of then applicable law does not become vulnerable because later judicial decisions indicate that the plea rested on a faulty premise.

397 U.S. at 757, 90 S.Ct. at 1473 (citations omitted). The Court found significant the fact that the plea was made with adequate advice of counsel as to the existing law and that there was no reason to question the accuracy of Brady's admissions. *Id.* at 757–58, 90 S.Ct. at 1473–74.

In *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), three state prisoners filed petitions for writs of habeas corpus alleging that their guilty pleas had been induced by coerced confessions. The petitioners relied on the Supreme Court's decision in *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), which ruled unconstitutional the New York procedure for determining the voluntariness of confessions. Since *Jackson* was later applied retroactively to defendants who had previously gone to trial, *McMann v. Richardson,* 397 U.S. at 773, 90 S.Ct. at 1450, the petitioners claimed that, had *Jackson* been available to them, the guilty pleas would never have been entered since the confessions could have been challenged effectively at the trial. The Supreme Court rejected this argument, drawing a distinction between pleas of guilty and convictions obtained after a trial. The Court stated:

A conviction after trial in which a coerced confession is introduced rests in part on the coerced confession, a constitutionally unacceptable basis for conviction. It is that conviction and the confession on which it rests that the defendant later attacks in collateral proceedings. The defendant who pleads guilty is in a different posture. He is convicted on his coun-

---

7. In *Hammond,* the lawyer advised defendant that he could be sentenced to consecutive terms for a single bank robbery under 18 U.S.C. § 2113(a) and (d), *i. e.,* 45 years. Defendant was charged in two bank robberies. In

*Cooks,* the lawyer advised defendant he could be sentenced to six consecutive ten-year terms for a single act of transporting six forged securities in interstate commerce.

seled admission in open court that he committed the crime charged against him. The prior confession is not the basis for the judgment, has never been offered in evidence at a trial, and may never be offered in evidence. Whether or not the advice the defendant received in the pre-*Jackson* era would have been different had *Jackson* then been the law has no bearing on the accuracy of the defendant's admission that he committed the crime.

397 U.S. at 773, 90 S.Ct. at 1450.

The *Brady* cases [8] involved the invalidation of pretrial or sentencing procedures after the petitioners had entered guilty pleas. Where the post-conviction changes in the law had a substantive impact, altering the nature of the crime to which guilty pleas had been entered or requiring the government to establish additional elements of the crime, the outcome of the collateral attack on the plea has depended in large measure on whether the government was entirely barred from prosecuting the defendant as a result of the new case law. In *United States v. Liquori*, 430 F.2d 842 (2d Cir. 1970), *cert. denied*, 402 U.S. 948, 91 S.Ct. 1614, 29 L.Ed.2d 118 (1971), petitioner pled guilty to unlawfully acquiring marijuana without paying the required transfer tax, in violation of 26 U.S.C. § 4744(a). Subsequently, the Supreme Court decided *Leary v. United States*, 395 U.S. 6, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969), which held that a timely assertion of the privilege against self-incrimination is a complete defense to a § 4744(a) prosecution. On a § 2255 motion brought by petitioner, the Second Circuit vacated the conviction on the ground, *inter alia*, that the entire statutory scheme imposing punishment violated the Fifth Amendment. Significantly, Liquori did not argue that his plea of guilty was involuntary. *United States v. Liquori, supra* at 849. *See United States v. Travers*, 514 F.2d

1171 (2d Cir. 1974); *Harrington v. United States*, 444 F.2d 1190 (5th Cir. 1971).

A different result was reached in *Abbamonte v. United States*, 335 F.Supp. 1180 (S.D.N.Y.1972). There, petitioner challenged his guilty plea to charges of violating 21 U.S.C. § 174 (cocaine hydrochloride) on the ground that his plea was involuntary. Petitioner relied on the Supreme Court's decision in *Turner v. United States*, 396 U.S. 398, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), which struck down the presumption provision of § 174 as applied to small amounts of cocaine. The district court denied the petition, ruling that the plea was a knowing and voluntary act:

We are not dealing here with a statute under which the government could not prosecute the defendant because of some constitutional barrier, as in *United States v. Liquori*. Rather, this is a case where, even if the inference authorized by the statute were impermissible, the government could prosecute the defendant, but would be required to establish the essential elements of the offense without reliance upon the inference. The fact that an intervening decision imposes a heavier burden upon the prosecution or makes its case weaker than the defendant originally thought does not vitiate a guilty plea.

335 F.Supp. at 1183. *See Hillaire v. United States*, 438 F.2d 128 (5th Cir. 1971); *Riscard v. United States*, 335 F.Supp. 671 (D.Puerto Rico 1972); *Alaway v. United States*, 329 F.Supp. 78 (C.D.Cal.1971).

In the present case, we are not confronted with a situation where a defendant was induced to plead guilty by fraud or threats or other misconduct by government officials. Nor does this case involve inadequate or misleading advice by counsel. Rather, petitioner's claim of coercion stems solely from the government's intention to prosecute petitioner for a crime that carried a mandatory 25-year sentence and from

---

**8.** In *Parker v. North Carolina*, 397 U.S. 790, 90 S.Ct. 1458, 25 L.Ed.2d 785 (1970), the third case in the *Brady* trilogy, petitioner attacked his guilty plea to a burglary charge on the ground, *inter alia*, that the plea had been coerced by a North Carolina statute providing a maximum

penalty in the event of a plea of guilty that was lower than the death penalty authorized after a verdict of guilty following a trial. The Court rejected this argument, relying on its decision in *Brady*.

Judge Judd's advice that a conviction was likely. But the fact that § 2114, which at the time was thought to provide a valid basis for prosecution, induced the plea does not necessarily establish that the plea was coerced. *See Brady v. United States,* 397 U.S. at 750, 90 S.Ct. at 1470. We see no reason why this case should not be governed by *Brady v. United States, supra,* where fear of an unconstitutional death penalty provision motivated the guilty plea. It is unimportant that in the present case petitioner's apprehension of a severe sentence turned out to be unfounded because the underlying offense could not have been prosecuted, while in *Brady* the sentence itself was struck down. In both cases, the pleas were motivated by the possibility of severe sentences, a factor that by itself does not render a guilty plea invalid. An otherwise valid plea is not involuntary "because induced by the defendant's desire to limit the possible maximum penalty . . . ." *Parker v. North Carolina,* 397 U.S. 790, 795, 90 S.Ct. 1458, 1461, 25 L.Ed.2d 785 (1970).

True, unlike *Brady,* in this case a mandatory sentence provision in the statute induced a plea to a charge of violating a different provision of the statute. Nonetheless, the distinction is without significance. Insofar as the issue of coercion is involved, it matters little whether the threat of a strict sentence is found alongside the substantive provision that is ultimately pled to or is contained in a separate section.

Furthermore, this is not a case in which the government is completely barred from prosecuting the defendant for the conduct acknowledged by the guilty plea. To the contrary, the facts underlying the plea constitute a violation of 18 U.S.C. §§ 641 and 642. A guilty plea not only involves entering the government's charges against the defendant without a trial. Central to the plea "is the defendant's admission in open court that he committed the acts charged in the indictment." *Brady v. United States,* 397 U.S. at 748, 90 S.Ct. at 1468. In this case, unlike those where a change in case law leaves no justifiable basis for prosecu-

tion, there is a strong governmental interest in punishment. *See McMann v. Richardson,* 397 U.S. at 774, 90 S.Ct. at 1450; *United States v. Liquori, supra* at 849; *Liptscher v. United States,* 84 Civ. 4444 (S.D.N.Y. April 1, 1975). It would be pointless to overturn petitioner's guilty plea "when there is no significant question concerning the accuracy of the process by which judgment was rendered or, in other words, when essential justice is not involved." *Gosa v. Mayden,* 413 U.S. 665, 685, 93 S.Ct. 2926, 2938–39, 37 L.Ed.2d 873 (1973). See *United States v. Travers, supra* at 1177–78.

Accordingly, the petitioner's motion to vacate his plea of guilty is denied, and it is

SO ORDERED.