Jimmie Dewain **KENNEDY**,
Petitioner-Appellant,

v.

Ross **MAGGIO**, Jr., **Warden, Louisiana State Penitentiary,**
Respondent-Appellee.

No. 82–3584.

United States Court of Appeals,
Fifth Circuit.

Feb. 21, 1984.

Herbert Lawson, Asst. Federal Public Defender, New Orleans, La., for petitioner-appellant.

Abbott J. Reeves, Asst. Dist. Atty., Gretna, La., for respondent-appellee.

Before BROWN and RANDALL, Circuit Judges, and HUNTER *, District Judge.

RANDALL, Circuit Judge:

Petitioner Jimmie Kennedy appeals from the district court's denial of his habeas corpus petition. Kennedy was indicted in Lou-

isiana state court for attempted murder and aggravated rape. As a result of plea negotiations, the attempted murder charge was dropped and he pleaded guilty to aggravated rape. He was sentenced to life imprisonment. He now contends that he was not afforded effective assistance of counsel, thus rendering his guilty plea involuntary. For the reasons set forth below, we reverse the decision of the district court and order that the writ be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

Kennedy was indicted on November 14, 1972. He requested and received court-appointed counsel. Shortly before his scheduled trial, Kennedy substituted for appointed counsel a retained attorney, Milton Masinter. Masinter entered into plea negotiations with the district attorney, which resulted in Kennedy's guilty plea, on September 10, 1973, to aggravated rape, for which he was sentenced to life imprisonment.

Kennedy's state habeas corpus petition was denied, whereupon he filed the instant section 2254 action.[1] The district court initially dismissed his petition without a hearing. On appeal, 638 F.2d 245, we vacated the district court's decision and remanded the case for further proceedings. *See* Record Vol. I at 103–05. On remand, an evidentiary hearing was held before a magistrate, who recommended that the petition be denied. After a further hearing, the district court adopted the magistrate's recommendation and again dismissed the petition.

The hearings held by the district court demonstrated that both Masinter and the state trial judge assumed that the death penalty was available and applicable in Kennedy's case, and that Masinter so advised Kennedy. *See* Record Vol. II at 7

---

\* District Judge of the Western District of Louisiana, sitting by designation.

1. Although the state contended in the district court that Kennedy had failed to exhaust his state remedies, *see* Record Vol. I at 59, it does not pursue this argument on appeal. *See* 28 U.S.C. § 2254(b). Consequently, we conclude

that the state has waived any such issue. *See* *McGee v. Estelle,* 722 F.2d 1206, 1213 (5th Cir.1984) (en banc); *Ware v. King,* 694 F.2d 89, 91 n. 1 (5th Cir.1982), *cert. denied,* — U.S. ——, 103 S.Ct. 2092, 77 L.Ed.2d 302 (1983); *Hopkins v. Jarvis,* 648 F.2d 981, 983 n. 2 (5th Cir.1981).

(testimony of Judge Hillary Crain); 19, 21 (testimony of Milton Masinter). Kennedy testified repeatedly at the hearings that he pleaded guilty to avoid the possible imposition of the death penalty, which Masinter had told him could result if he went to trial and was convicted, and that he would not have so pleaded had he known the death penalty was unavailable. *See, e.g.,* Record Vol. II at 52, 53, 64–65, 67, 68, 69, 74, 94, 96, 97 (testimony of Jimmie Kennedy).

In dismissing Kennedy's petition, the district court specifically found that Kennedy's guilty plea was induced by the erroneous belief, based on Masinter's advice, that he was avoiding a possible death penalty by his plea. Despite this finding, the district court considered *Jackson v. Estelle,* 548 F.2d 617 (5th Cir.1977), to pose an "insurmountable hurdle" to Kennedy's claim, thus mandating dismissal. *See* Record Vol. I at 222–25.

## II. THE LOUISIANA STATUTE, *FURMAN v. GEORGIA,* and *SINGLETON.*

At the time of Kennedy's plea, the Louisiana aggravated rape statute provided:

> Whoever commits the crime of aggravated rape shall be punished by death.

La.Rev.Stat.Ann. § 14:42 (West 1974), *amended by* Acts 1978, No. 239, § 1. Pursuant to La.Code Crim.Pro.Ann. art. 817 (West 1966), *amended by* Acts 1972, No. 502, § 1, however, a verdict of guilty in such a case could be qualified by the jury's addition of the words, "without capital punishment," in which case the defendant was sentenced to life imprisonment. Kennedy's plea of guilty was a "qualified plea" in that he entered his plea with the understanding that he would be sentenced to life imprisonment.

Although the Louisiana statute imposing the death penalty for aggravated rape had not been legislatively repealed at the time Kennedy entered his guilty plea, it can not be seriously disputed that *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), had effectively abrogated Louisiana's statutory capital punishment scheme at that time. Among the statutes under scrutiny in *Furman,* and held there to be unconstitutional, was a Texas statute that vested in the jury the discretionary power to impose the death penalty upon returning a verdict of guilty in a case of rape.[2] The Louisiana statute under which Kennedy was charged was similar; moreover, in *State v. Singleton,* 263 La. 267, 268 So.2d 220 (1972), the Louisiana Supreme Court acknowledged that *Furman* had effectively dealt the death blow, as it were, to capital punishment for aggravated rape under the then-current Louisiana law.[3] *See also State v. Poland,* 263 La. 269, 268 So.2d 221 (1972) (setting aside death sentence for murder in light of *Furman* ); *State v. Flood,* 263 La. 700, 269 So.2d 212, 214 (1972) (no capital offenses in Louisiana in light of *Furman* ); *State v. Holmes,* 263 La. 685, 269 So.2d 207, 209 (1972) (imposition of Louisiana death penalty held unconstitutional in *Furman* ).

2. The Texas statute provided that a "person guilty of rape shall be punished by death or by confinement in the penitentiary for life, or for any term of years not less than five." Tex.Penal Code art. 1189 (Vernon 1961), *superseded by* Tex.Penal Code § 21.02 (Vernon 1982 Supp.).

3. In its entirety, *Singleton* provided:

Defendant, Edison Arthur Singleton, was convicted of aggravated rape and the death sentence imposed was affirmed by this Court. 253 La. 18, 215 So.2d 838 (1968).

Citing *Steward v. Massachusetts,* 408 U.S. 845, 92 S.Ct. 2845, 33 L.Ed.2d 744 (1972) following *Furman v. Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), the United States Supreme Court vacated the judgment herein insofar as it left undisturbed the death penalty imposed and remanded this case to this Court for further proceedings. 408 U.S. 932, 92 S.Ct. 2852, 33 L.Ed.2d 745 (1972).

We construe the Mandate of the United States Supreme Court to require the imposition of a sentence other than death. Cf., *State v. Shaffer,* 260 La. 605, 257 So.2d 121 (1971) and *State v. Duplessis,* 260 La. 644, 257 So.2d 135 (1971).

Accordingly, in compliance with the Mandate of the United States Supreme Court, the death sentence imposed upon defendant is annulled and set aside, and the case is remanded to the 17th Judicial District Court with instructions to the trial judge to sentence the defendant to life imprisonment.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL.

■ Kennedy contends that he was denied the right to effective assistance of counsel because he was incorrectly advised that the death penalty was available in his case. The sixth and fourteenth amendments guarantee the defendant in a state criminal trial the fundamental right to effective assistance of counsel. *Martin v. Maggio,* 711 F.2d 1273, 1279 (5th Cir. 1983); *Vela v. Estelle,* 708 F.2d 954, 961 (5th Cir.), *cert. denied,* —— U.S. ——, 104 S.Ct. 736, 79 L.Ed.2d 195 (1983). This guarantee does not demand error-free representation, *see Hayes v. Maggio,* 699 F.2d 198, 201 (5th Cir.1983), but it does mandate that the defendant be represented by "counsel reasonably likely to render and rendering effective assistance." *Vela v. Estelle,* 708 F.2d at 961. This standard has resulted in our insistence that "effective counsel conduct a reasonable amount of pretrial investigation," *Washington v. Strickland,* 693 F.2d 1243, 1251 (5th Cir. 1982) (en banc), *cert. granted,* —— U.S. ——, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983), including, where necessary, an adequate amount of legal research. *See Cooks v. United States,* 461 F.2d 530, 532 (5th Cir.1972).

■ We have also stated that, while good faith errors by counsel do not necessarily deprive a defendant of adequate representation,

> significant misleading statements of counsel can rise to a level of denial of due process of law and result in vitiation of the judicial proceeding because of ineffective assistance of counsel.... Where counsel has induced defendant to plead guilty on the *patently erroneous* advice that if he does not do so he may be subject to a sentence six times more severe than that which the law would really allow, the proceeding surely fits the mold we describe as a "farce and a mockery of justice."

*Cooks v. United States, supra,* at 532 (citations omitted) (emphasis in original).[4] Assistance is not rendered ineffective if, while correct when given, counsel's advice is *subsequently* proved to be inaccurate. *Brady v. United States,* 397 U.S. 742, 757, 90 S.Ct. 1463, 1473, 25 L.Ed.2d 747 (1970); *Cooks, supra.* However, with regard to the current state of the law in relation to the facts of a given case, counsel must render advice sufficient to allow the accused to make an "informed and conscious choice." *Herring v. Estelle,* 491 F.2d 125, 128 (5th Cir.1974).

Finally, we note that a finding of ineffective assistance alone does not entitle the defendant to relief. He must further demonstrate that his counsel's inadequacy "worked to his *actual* and substantial disadvantage." *Washington v. Strickland,* 693 F.2d at 1258 (emphasis in original) (quoting *United States v. Frady,* 456 U.S. 152, 170, 102 S.Ct. 1584, 1595, 71 L.Ed.2d 816 (1982)).

■ Application of these standards to the facts before us compels the conclusion that Kennedy was denied effective assistance of counsel. He was counseled, despite *Furman v. Georgia* and *Singleton,* that the death penalty was available for the crime with which he was charged. As we stated in *Cooks,* "although counsel need not be a fortune teller, he must be a reasonably competent legal historian. Though he need not see into the future, he must reasonably recall (or at least research) the past...." 461 F.2d at 532. Such research is not demonstrated in this case. The import of *Singleton,* which followed *Furman* by four months and preceded Kennedy's guilty plea by ten months, was unmistakable. No clairvoyance or fortune-telling was required for Kennedy's attorney and the trial judge to appreciate the then-current state of the law in Louisiana. Moreover, although the state asserts that Kennedy has failed to demonstrate any "actual, adverse impact on the fairness of his trial" as a result of ineffective assistance of counsel, we think it is abundantly clear that such unfairness

---

**4.** In the instant case, Kennedy aptly points out that the death penalty can reasonably be considered at least "six times more severe" than the maximum penalty actually available for his offense.

resulted. A plea of guilty that is based on the fear of a non-existent penalty can be neither knowing nor intelligent, and this flaw colors the fundamental fairness of the entire proceeding. *See Boykin v. Alabama,* 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

While the state's brief is not entirely clear on this issue, it does acknowledge that "[i]nasmuch as the death penalty had been found unconstitutional in *Furman v. Georgia,* the Louisiana Supreme Court has remanded cases where death had been imposed for resentencing to life imprisonment. See *State v. Singleton....*" Brief for Appellee at 4–5. However, the state goes on to assert that "[t]he advice by [Kennedy's] counsel that the defendant might receive the death penalty was in accordance with the state of the law on that date." Brief for Appellee at 9. To the extent that this implies that the death penalty could constitutionally have been imposed for aggravated rape at the time Kennedy entered his plea, the opposite is clearly the case. To the extent that the state is contending that the effect of *Furman* on the Louisiana death penalty was uncertain at the time of Kennedy's plea, we think that this assertion lacks merit in light of *Singleton,* which was decided almost a year before Kennedy pleaded guilty.

Our determination that Kennedy's counsel was ineffective mandates the conclusion that his plea of guilty was not "voluntary" in the constitutional sense. A plea of guilty must be knowing and intelligent to pass constitutional muster. *Brady, supra; Boykin v. Alabama, supra.* Because such a plea amounts to an admission of all of the elements of the crime charged, "it cannot be truly voluntary unless the defendant possesses an understanding of the

law in relation to the facts." *Johnson v. Zerbst,* 304 U.S. 458, 466, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). It is elementary that a plea entered in reliance on the defendant's attorney's patently erroneous statement of the law in relation to the facts does not meet this standard. *See Cooks v. United States,* 461 F.2d at 532; *see also United States v. Ammarito,* 670 F.2d 552, 555 (5th Cir.1982); *Herring v. Estelle, supra.*

## IV. *JACKSON V. ESTELLE.*

The chronological and factual circumstances presented by this case serve to distinguish it from *Jackson v. Estelle,* 548 F.2d 617 (5th Cir.1977), by which the district court considered itself constrained.[5] There, we affirmed the denial of habeas relief, in a case originating in Texas, despite the defendant's claim that he had been induced to plead guilty to murder by his attorney's erroneous advice that he risked the death penalty by going to trial. We stated that we did not perceive this to have constituted fundamental unfairness, noting that the defendant's attorney, the prosecutor, and the trial judge "entertained doubt as to *Furman's* effect on the Texas death penalty." *Id.* at 619. Such a doubt was arguably reasonable in that case, because *Furman,* while addressing a Texas statute, had dealt with the Texas death penalty for aggravated rape, not murder. Moreover, although the Texas Court of Criminal Appeals had recognized *Furman's* applicability to Texas' death penalty for murder prior to Jackson's guilty plea, *see Ex Parte Contella,* 485 S.W.2d 910 (Tex.Cr.App.1972), we note that *Contella* was decided a mere two months before Jackson entered his plea of guilty. It is entirely plausible to assume that the

---

5. Although Kennedy urges us to "overrule" *Jackson,* it is not the province of one panel of this court to overrule another panel's determination. Moreover, it is unnecessary for us to pass on the merits of the *Jackson* decision, which clearly was limited to the particular facts presented there, which are not presented here. Finally, we note that *Jackson* has been cited by this court only twice, both times for a proposition different from the one before us

today. *See Sloan v. Estelle,* 710 F.2d 229, 231 (5th Cir.1983) (attorney's failure to investigate fully an insanity defense not ineffective assistance where partial investigation led to reasonable conclusion that such defense had little chance of success); *Washington v. Strickland,* 693 F.2d 1243, 1256 n. 21 (5th Cir.1982) (en banc) (same), *cert. granted,* —— U.S. ——, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983).

**274**

normal delays of publication and dissemination reasonably resulted in the doubt that Jackson's counsel testified to. No such assumption is acceptable in the instant case, where a full ten months elapsed between *Singleton* and Kennedy's guilty plea.

## IV. CONCLUSION.

The judgment of the district court denying the writ is reversed and the district court is ordered to grant the writ, subject to the state's right to reindict and retry the defendant within 90 days of the date of this opinion. It goes without saying that if he is retried, Kennedy must be afforded the opportunity to enter a constitutionally valid plea.

The decision of the district court is REVERSED.