**William LEE, Petitioner-Appellee,**

v.

**Joseph S. HOPPER, Warden, Georgia State Prison, Respondent-Appellant.**

**No. 73–3601.**

United States Court of Appeals, Fifth Circuit.

Aug. 23, 1974.

Rehearing Denied Sept. 23, 1974.

458

Arthur K. Bolton, Atty. Gen., Courtney Wilder Stanton, Asst. Atty. Gen., B. Dean Grindle, Jr., Deputy Asst. Atty. Gen., Atlanta, Ga., for respondent-appellant.

F. Robert Raley, Macon, Ga. (Court-appointed), for petitioner-appellee.

Before BELL, GOLDBERG and CLARK, Circuit Judges.

CLARK, Circuit Judge:

William Lee received a fifteen year prison sentence after his attorney, in Lee's presence and with his tacit approv-

al, entered pleas of guilty to indictments charging two counts of rape. Three years later Lee initiated habeas corpus proceedings in the Georgia state courts claiming that the pleas had been entered by his privately retained attorney without authority and in contravention of his request for a jury trial.[1] The Superior Court of Tatnall County denied his petition after a full evidentiary hearing, finding that the decision to plead guilty had been made by Lee only after his attorney had investigated the factual bases of the charges and had fully apprised Lee of his rights and the consequences of his plea. The Georgia Supreme Court affirmed. Lee v. Smith, 229 Ga. 819, 194 S.E.2d 475 (1972).

A petition for relief under section 2254 was then filed with the federal district court. Respondent moved for dismissal or summary judgment on the basis of the facts as developed in the state habeas court. A ruling on the motion was delayed pending an evidentiary hearing. After the hearing, the district court denied the motion and concluded that because Lee's decision to plead guilty had been based on his attorney's advice that a bargained guilty plea was the only reasonable course open to him when in fact substantial legal and factual defenses had not been investigated, Lee's plea decision had not been knowingly made. The conviction was ordered set aside and Lee was remanded to a Georgia court for retrial within ninety days. Lee v. Caldwell, Civil No. 2785 (M.D.Ga., Aug. 24, 1973). That order has been stayed pending disposition of this appeal.

The grant of habeas relief is challenged here on two grounds. Respondent first asserts that it was an abuse of discretion for the district court to conduct an evidentiary hearing and make independent findings of fact when the case was ripe for summary disposition on the basis of the state court record. Respondent also contends that the court erred in its ultimate conclusion on the merits. After examination of the state and federal court hearings and opinions, we conclude (1) that the district court did not abuse its discretion in holding an evidentiary hearing, but (2) that one phase of the question whether the guilty pleas were knowingly made has not been adequately developed. We therefore remand for further proceedings.

The facts of the case were these: On October 10, 1967, Lee, an attendant at the State Hospital in Milledgeville, Georgia, was charged with the rape of two young mental patients. James M. Watts, an attorney in regular practice in Milledgeville who was then exercising the powers of a justice of the peace as judge of the Small Claims Court of Baldwin County, issued a warrant commanding Lee's arrest. Lee was apprehended in Ohio, waived extradition, and was returned to Georgia for trial. Shortly thereafter Lee's family retained Watts to represent Lee on the two rape charges as well as one charge of forgery and one of larceny. One of the two rape indictments returned by the Grand Jury of Baldwin County charged Lee with carnal knowledge of a named female, forcibly and against her will. The other indictment charged him with carnal knowledge of a named female under fourteen years of age without having previously become lawfully married to her. The state evidentiary hearing disclosed that a second male, also a patient at the hospital, was present at and participated in the rapes.

Lee's petition before the Tatnall County court initially alleged only that he had entered his plea of guilty after Watts' assurance that he would receive "a much lesser sentence than the sentence he received." Lee later amended his petition to allege that he had never authorized Watts to enter a plea of

---

1. The arraignment antedated Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed. 2d 274 (1969), which held a recorded judicial determination of voluntariness constitutionally required. Boykin was refused retroactive effect in Dominguez v. Henderson, 447 F.2d 207 (5th Cir. 1971).

guilty for him and that Watts had not rendered effective assistance in representing him. He also alleged that he was never given a preliminary or bail hearing and was never informed of the indictments against him. The following excerpt from the Tatnall County court findings summarizes that court's factual conclusions:

The record shows that Mr. James M. Watts, Jr., attorney at law, Milledgeville, Georgia was privately employed by the family of petitioner; that he had practiced law in Milledgeville, Georgia for thirty-two (32) years; approximately ¼ of his time being devoted to criminal work; that he represented William Lee on two charges of rape and other charges in January, 1968, that he had talked with the father first and then with William, the defendant in jail; with his wife, with his mother-in-law, and also with his grandmother, and that defendant indicated to him that he wanted Mr. Watts to represent him and never indicated any dissatisfaction with his representation; that he was retained by the family in October, 1967, which was some several months prior to the sentencing of the petitioner; that he talked with defendant on several occasions in the jail; that he talked to both of the girls defendant was accused of raping; that he talked to the assistant superintendent of the hospital and checked the records concerning their commitment, the girls being patients at the Central State Hospital at the time, and the defendant being an attendant at the hospital. Mr. Watts stated that they talked about having a lie detector test but decided against it. The attorney advised him of the maximum punishment for rape which was death or life imprisonment. Mr. Watts told him that he had a right to a jury trial. Mr. Watts discussed the case also with the District Attorney, and it was his opinion that the state had a strong case or cases, and that he so advised defendant, after which defendant decided he would plead guilty. This fact was communicated to defendant's wife, his mother-in-law, his father, his grandmother, and a good friend of his father. After many discussions with the sheriff and the district attorney, the district attorney agreed to recommend the sentence of 15 years for the two offenses. Mr. Watts testified that the recommendation was never anything less than 15 years and that he advised petitioner that the Judge would not be bound by the recommendation but that he usually went along with the recommendation of the district attorney. Mr. Watts testified that he told the defendant on many occasions that the decision was strictly his as to whether he would plead guilty or not guilty, and that he was not coerced in any way to plead guilty. Mr. Watts testified that when petitioner was sentenced, he did not indicate any dissatisfaction with the sentence he received.

The court held the non-jurisdictional defects waived by Lee's guilty plea, *see* Brady v. United States, 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), and focused on the adequacy of the representation afforded by Watts. Applying the Georgia standard of counsel "so ignorant, negligent, or unfaithful that the accused was virtually unrepresented or did not in any real or substantial sense have aid of counsel," Gardner v. State, 117 Ga.App. 262, 160 S.E.2d 271 (1968), the court found that Lee had failed to carry his burden of proof. Describing Lee's main contention as being that "he and his attorney had talked about a twelve year sentence when in fact he received fifteen years," the court viewed the relative leniency of the sentence received on charges for which the death penalty or life imprisonment could have been imposed as indicative of effective counsel.

I.

We first confront respondent's averment of error in the district court's refusal to grant the motion for summary

judgment and the holding of an evidentiary hearing. This motion was filed in the district court simultaneously with the return and answer to Lee's habeas petition. Also submitted in support of the motion was the transcript and record of the state habeas proceeding.[2] Respondent contends that the district judge abused his discretion in failing to grant this motion in light of the presumption of correctness afforded the state court determinations by section 2254(d) and Lee's failure to contravene any of those determinations so as to create a "genuine issue for trial" under Rule 56(e), Federal Rules of Civil Procedure.[3]

■ That the district court has the *power* to hold an evidentiary hearing cannot be doubted. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). In *Townsend* the Supreme Court set out criteria for determining whether to grant a federal hearing. Among these were findings that the record as a whole does not fairly support the state factual determinations and that the material facts were not adequately developed at the state court hearing. These two standards are identical to sections 2254(d)(3) and (d)(8), upon which the district court relied in deciding that the record before it was insufficient to afford a reliable basis for determining the difficult question of voluntariness presented. · For instance, the court noted that Watts had not testified in person at the state hearing. His

testimony had been preserved in a deposition taken in a proceeding not attended by Lee's counsel. The state trier of fact thus had no opportunity to evaluate Watts' testimony on the basis of a direct confrontation. Furthermore, the copies of the indictment submitted by respondent appeared to indicate that pleas of not guilty rather than guilty had been entered.[4] In these circumstances the holding of a federal evidentiary hearing cannot be said to have been an abuse of discretion.

■ In addition, the written opinion of the state court suggests that its favorable evaluation of Watts' assistance rested on application of an unacceptable standard of effectiveness. The Georgia court found that Lee had failed to show that Watts was "so ignorant, negligent, or unfaithful that the accused was virtually unrepresented or did not in any real or substantial sense have aid of counsel." The state court found Lee's proof equally lacking under the "farce or mockery of justice" standard referred to in several Fifth Circuit opinions. Herring v. Estelle, 491 F.2d 125 (5th Cir. 1974), concluded that the proper constitutional standard had been announced in MacKenna v. Ellis, 280 F.2d 592 (5th Cir.), cert. denied, 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1960), as "counsel reasonably likely to render and rendering reasonably effective assistance." Counsel may be ineffective by this measure without satisfying the "mockery of justice" criterion. Herring

---

2. A plea by Lee to abate the cause pending action on his petition for certiorari in the Georgia Supreme Court was granted, but the record contains no answer or further plea. Both parties refer to a "response" by Lee to the effect that the indictments under which he had been sentenced revealed pleas of "not guilty" rather than "guilty" but it is not in the record. Respondent notes that this claim had not been made previously and that it contradicted Lee's own assertion that pleas of *guilty* had been entered without his authorization.

3. Rule 56(e), Fed.R.Civ.P., provides in pertinent part that

[w]hen a motion for summary judgment is made and supported as provided in this

rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

4. Examination of the original indictments at the federal hearing revealed pencil marks through the word "not" where "not guilty" appeared on the printed forms. The reproduction process used had not accurately demonstrated the marks on the copies first presented to the court.

v. Estelle, *supra*, 491 F.2d at 128; United States v. Edwards, 488 F.2d 1154, 1164–1165 (5th Cir. 1974). Since the issues of effective assistance and voluntariness present mixed questions of law and fact, *see* Davis v. Heyd, 479 F.2d 446, 451 (5th Cir. 1973), and since such questions do not fall within section 2254(d)'s presumption of correctness, *see* Townsend v. Sain, *supra*, 372 U.S. at 309 n. 6, 83 S.Ct. at 755 n. 6, the district court was under no constraint to defer to the state conclusions.[5]

## II.

■■ The state court found, and the hearing below confirmed, that Lee did in fact agree to the entering of pleas of guilty on his behalf. Having done so, Lee is limited in this proceeding to a challenge to the voluntary and knowing nature of his pleas. "[I]neffective assistance of counsel . . . is immaterial in an attempt to impeach a plea of guilty, except perhaps to the extent that it bears on the issues of voluntariness and understanding." Edwards v. United States, 103 U.S.App.D.C. 152, 256 F.2d 707, 709–710, cert. denied, 358 U.S. 847, 79 S.Ct. 74, 3 L.Ed.2d 82 (1958). Our review, then, must focus on whether the shortcomings in Watts' representation found by the court below so distorted the alternatives available to Lee that his pleas lacked the requisite cognition.

■ "If a prisoner pleads guilty on the advice of counsel, he must demonstrate that the advice was not 'within the range of competence demanded of attorneys in criminal cases.'" Tollett v. Henderson, 411 U.S. 258, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973), quoting from McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). That range of competence requires "not errorless counsel, and not counsel judge ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance." MacKenna v. Ellis, *supra*, 280 F.2d at 599. Implicit in the decision of the court below is a finding that Watts' assistance did not fall within this range. The correct legal standard having been applied, our review is limited to a determination whether that finding is clearly erroneous.

■ Although the amount of investigatory effort required to render an attorney's advice on how to plead competent will necessarily vary with the difficulty of the factual and legal bases of the charges, an examination of recent decisions indicates that less than the exhaustive and plenary investigation that would accompany a trial will satisfy the constitutional mandate.[6] "[I]t appears that the only required duty of counsel under the most liberal construction when a plea of guilty is entered is that counsel . . . should ascertain if the plea is entered voluntarily, and knowingly." Lamb v. Beto, 423 F.2d 85, 87 (5th Cir.), cert. denied, 400 U.S. 846, 91 S.Ct. 93, 27 L.Ed.2d 84 (1970); *see* Herring v. Estelle, *supra*, 491 F.2d at 128; Walker v. Caldwell, 476 F.2d 213 (5th Cir. 1973); Colson v. Smith, 438 F.2d 1075 (5th Cir. 1971). The words "voluntarily" and "knowingly" or "under-

---

5. Respondent relies on the Supreme Court's interpretation of section 2254(d) in LaVallee v. Rose, 410 U.S. 690, 93 S.Ct. 1203, 35 L. Ed.2d 637 (1973). In *LaVallee* the Court held that the district court erred in failing to afford the findings of fact of the state habeas court a presumption of correctness when the sole reason for not doing so was the absence of any express statement of the state court's evaluation of credibility. The Court noted that *Townsend* permitted an assumption that, where there is no "reason to suspect that an incorrect standard was in fact applied," the state court found the facts against the petitioner. Thus, the absence of an articulated evaluation of credibility did not leave the merits of the factual dispute unresolved. In the case before us, the issues presented went not to the resolution of factual disputes but to the adequacy of their development. *LaVallee* is inapposite.

6. *See* Herring v. Estelle, 491 F.2d 125 (5th Cir. 1974); Winters v. Cook, 489 F.2d 174 (5th Cir. 1973); Walker v. Caldwell, 476 F.2d 213 (5th Cir. 1973); Cooks v. United States, 461 F.2d 530 (5th Cir. 1972); Colson v. Smith, 438 F.2d 1075 (5th Cir. 1971); O'Neal v. Smith, 431 F.2d 646 (5th Cir. 1970).

standingly" are, however, terms of art, the meanings of which are somewhat circumscribed. In Edwards v. United States, *supra,* Chief Justice (then Judge) Burger made the following observations in a case raising allegations similar to those *sub judice:*

> "There seems to be little doubt that the plea of guilty was in the present case voluntary. There is no allegation that appellant was induced to plead guilty by any conduct of the police, prosecutor or court, but only that his own counsel's "bad" advice induced him to plead guilty. This, however, does not itself make out involuntariness. It seems likewise clear that the plea was understandingly made. It may be argued that a plea of guilty is not understandingly made when defendant is unaware of certain technical defenses which might very well make the prosecutor's job more difficult or even impossible were he put to his proof. However, we think "understandingly" refers merely to the *meaning* of the charge, and what acts amount to being *guilty* of the charge, and the *consequences* of pleading guilty thereto, rather than to dilatory or evidentiary defenses."

Edwards v. United States, *supra,* 256 F. 2d at 710 (footnotes omitted). Counsel is not relieved of responsibility to investigate potential defenses, however. "Effective counsel includes familiarity of counsel with the case and an opportunity to investigate it if necessary in order meaningfully to advise the accused of his options." Calloway v. Powell, 393 F.2d 886, 888 (5th Cir. 1970). "It is [the lawyer's] job to provide the accused an 'understanding of the law in relation to the facts.' . . . And a lawyer who is not familiar with the facts and law relevant to his client's case cannot meet that required mimimal level [of assistance]." Herring v. Estelle, *supra,* 491 F.2d at 128. *See* Von Moltke v. Gillies, 332 U.S. 708, 721, 68 S.Ct. 316, 322, 92 L.Ed. 309 (1948).

 With the focus of our inquiry thus sharpened, we turn to the bases for the findings below of ineffective assistance, after first noting the following. The facts adduced at the federal evidentiary hearing did not contradict those found by the state court, quoted above. The factors considered determinative of incompetent advice by the federal habeas court were revealed only in the federal hearing and did not figure in the state decision. We therefore accept the state findings of fact as correct.

The federal habeas court's conclusion that "substantial legal and factual defenses were never investigated" was based on the following findings: (1) although Lee eventually admitted to Watts that he had had intercourse with the girls, he never stated that he had forced himself on the girls without either's consent; (2) Watts never interviewed the other man allegedly present when the sex acts occurred, and no issue was made of the fact that charges were never brought against him; (3) Watts did not research Georgia law to determine what evidence was sufficient to corroborate a purported rape victim's testimony; (4) Watts failed to consider a demurrer to the indictment charging Lee with the rape of the thirteen-year-old girl on the grounds that it failed to charge him with "statutory" rape; (5) Watts had a possible conflict of interest because he was the judge who issued the warrant for Lee's arrest, and never told Lee of that fact; (6) Watts did not consider the possibility of attacking the racial composition of the grand and petit juries, even though he considered the composition of juries in Baldwin County to be very detrimental to Lee's case.

 Evaluating the first five of these acts and omissions in the context of the total representation provided by Watts, we are unable to agree that Lee has shown Watts' efforts to have been so deficient as to deprive his pleas of their voluntary character. Lee's failure to frame his confession to Watts in statutory terms matters less than the fact that Watts' investigation uncovered ample evidence to dent the viability of a defense based on consent. Both victims,

when interviewed by Watts, stated that they had had intercourse with Lee. Watts said the fourteen-year-old indicated that "she did not consent to the relations with William, that they were [had] forcibly and against her will, and that she tried to get away from him." Watts also testified that he interviewed a girl at the institution who stated that she heard a scream at about the time the rapes supposedly occurred. Consent would not, under Georgia law, be a defense against the charge of intercourse with the younger girl.[7] The failure to interview the alleged co-participant in the rapes may appear to be the more egregious omission, but in light of an otherwise adequate investigation and the questionable impact of testimony from such a patient-witness, we cannot find support for a finding that this deficit rendered Watts' advice infirm.

■ Watts testified that he did not research Georgia law to determine whether one victim of a joint rape could corroborate the testimony of another. However, his investigation did disclose corroborative evidence in the form of medical reports and the testimony of a third girl who saw the two victims leave the hospital with Lee and another man and who heard a scream shortly thereafter from the place where the rapes were alleged to have taken place. This evidence appears to satisfy the Georgia requirement of "slight circumstances of corroboration", see Strickland v. State, 207 Ga. 284, 61 S.E.2d 118 (1950). Watts did determine that both girls would have been permitted to appear as witnesses notwithstanding their status as mental patients. The fact that he did not also research the law as to whether or not the testimony of joint rape victims would be given corroborative effect does not demonstrate that Lee was de-

prived of any substantial defense by Watts' alleged legal research lapse.

■ The failure to consider a demurrer to the indictment and Watts' possible conflict of interest suffer from a similar deficiency. The indictments in question were drawn prior to the revision of the Criminal Code of Georgia in 1968. Under section 26–1301 of the 1933 code in effect at the time Lee was charged, statutory rape was not a defined term. Section 26–1303 declared it unlawful to have sexual intercourse with a female under the age of fourteen without previously having become lawfully married to her. The indictments were properly cast in the statutory terms then applicable.[8] Lee's challenge apparently is based upon the present codification, which does define the offense as statutory rape. Ga.Code Ann. § 26–2018 (1972). Having failed to show the indictment demurrable under the appropriate law, Lee cannot complain that his attorney's failure to consider a demurrer was erroneous. The objection on grounds of the "possible conflict of interest" fares no better. The mere possibility of a conflict, the precise nature of which has been neither shown nor suggested, cannot support a grant of habeas relief. If the conflict be said to give rise to an inability to recognize or reluctance to attack deficiencies in the warrant commanding Lee's arrest, Lee must have demonstrated that some deficiency did in fact exist to sustain a claim that he was deprived of effective assistance thereby. He did not do so.

The sixth ground—failure to consider a challenge to the grand and petit juries —presents a more serious question. The likelihood of an adverse verdict and a severe sentence undeniably figured in Lee's decision. Watts advised Lee that the best he could expect from a Baldwin

---

7. Although Watts testified that he had determined Georgia law would permit a mental patient to testify as a witness, the legal capacity of these thirteen or fourteen-year-old institutionalized children to consent to sexual intercourse with one of their custodians has not been raised.

8. An indictment that states the offense in the terms and language of the statute is deemed sufficiently technical and correct. Ga.Code Ann. § 27–701 (1972); see Coleman v. State, 215 Ga. 865, 114 S.E.2d 2 (1960); Pippen v. State, 205 Ga. 316, 53 S. E.2d 482 (1949).

County jury would be a life sentence. The district court found that this prediction was based, in part, at least, on the racial composition of the juries. The resolution of this issue falls within the instruction of the Supreme Court decision in Tollett v. Henderson, *supra*. The Court there confronted a habeas petition brought twenty-five years after the petitioner had been sentenced on his plea of guilty. The petitioner alleged as the sole ground for relief that blacks had been systematically excluded from the grand jury that indicted him. The Court reversed the grant of habeas relief, holding that after a criminal defendant pleads guilty the federal inquiry could extend only to the "nature of the advice and the voluntariness of the plea, not the existence as such of an antecedent constitutional infirmity." Citing the *McMann* test for evaluating advice, the Court noted that in particular fact situations, an attorney's failure properly to evaluate facts giving rise to a *constitutional* question or his failure to inform himself of facts that would have shown the existence of a *constitutional* claim might render the plea infirm. The Court set out a two-part test to be satisfied before federal habeas relief could be awarded: "[R]espondent must not only establish the unconstitutional discrimination in selection of grand jurors. He must also establish that his attorney's advice to plead guilty without having made inquiry into the composition of the grand jury rendered that advice outside the 'range of competence demanded of attorneys in criminal cases.'" Tollett v. Henderson, *supra*, 93 S.Ct. at 1608–1609.

█ Neither the record before this court nor the evidence presented to the court below is sufficient to make any judgment on the merits of Lee's allegations under either part of the *Tollett* test. The issue of jury discrimination appears to have been raised *sua sponte* by the court below without benefit of preparation or argument by either party. The finding of the court that a possible challenge existed was based on the inability of Watts and the state court clerk to recall any blacks on the grand jury panel. While the judge below did observe during the course of the hearing that "the average white lawyer in the state of Georgia in 1968 never challenged the composition of the jury", we refuse to treat that observation as a factual conclusion deciding that the failure to consider a challenge here rendered Watts' advice inadequate.[9]

█ The facts disclosed in the present record, or more aptly, the lack of them to support the essential findings, demonstrate that the ultimate conclusion of plea invalidity sails perilously close to the clearly erroneous shoals. However, a procedural sort of a disposition on failure of proof by the petitioner or improper fact finding by the judge could only result in a refiling and reexamination of the same facts at a later date when the court's grasp of the cause has been dimmed by the passage of time. The interests of justice indicate that the case be remanded to the district court so that it may determine whether further inquiry into jury selection procedures should be required.

█ To facilitate the trial judge's appraisal of need for that effort and ultimately the proper final disposition of this case, our holding is summarized. We recognize that receipt of a sentence of fifteen years on charges for which the death penalty could have been imposed is still no bargain if substan-

9. In Winters v. Cook, 489 F.2d 174 (5th Cir. 1973), this court expressly rejected a suggestion that it take judicial notice of the failure of white attorneys in this circuit fully to protect the rights of their black clients to a constitutionally chosen jury. *Id.* at 178. Although *Winters* differs factually from the instant case in a significant respect (the attorney in *Winters* traded the waiver of a constitutional challenge to the method of grand jury selection for a recommendation of life imprisonment rather than the death penalty; whereas, this record does not establish that Watts ever considered use of the objection as a bargaining tool), Lee is under no less an obligation to prove rather than simply allege that Watts breached his obligations to him by his actions.

tial factual and legal defenses lay undiscovered as a result of the defense attorney's neglect. However, evaluation of an attorney's efforts must never be made to turn solely on the ability of his newly dissatisfied client to show that the attorney might have done more than he did. A decision to plead guilty can be intelligently made on less information than would be required to prepare a trial defense. Even if the perfect vision of hindsight reveals a potentially meritorious defense in the backwaters left unexplored by an otherwise effective attorney, that alone would not dispel the voluntary nature of a decision to plead guilty. The effect of Watts' alleged incompetence upon Lee's decision must be appraised under the standards of Tollett v. Henderson and by such added light as is given by our decisions noted above. Evaluated by those standards, fact bases numbered (1) through (5) above are insufficient to support the court's conclusion that Watts left substantial defenses uninvestigated. However, Watts' failure to consider a challenge to the composition of the grand and petit juries has not yet received the scrutiny required by *Tollett.* Before holding further evidentiary proceedings to determine the existence of discrimination vel non in the selection of jurors in Baldwin County, the district court should assay whether the existence of such discrimination would affect Lee's guilty plea under the *Tollett* test. If Watts' advice would remain within the "range of competence" notwithstanding this factor, then further proceedings would be unnecessary.[10] This fact issue should first be resolved by the trial court.

The judgment granting habeas corpus relief is vacated and the cause is remanded for further proceedings not inconsistent with this opinion.

Vacated and remanded.

10. A prospect of plea bargaining, the expectation or hope of a lesser sentence, or the convincing nature of the evidence against the accused are considerations that might well suggest the advisability of a guilty plea without elaborate consideration of whether pleas in abatement, such as unconstitutional grand jury selection procedures, might be factually supported.
Tollett v. Henderson, 411 U.S. 258, 268, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973).