Conrado VELA, Petitioner-Appellant,

v.

W.J. ESTELLE, Jr., Director, Texas
Department of Corrections,
Respondent-Appellee.

No. 82–1236.

United States Court of Appeals,
Fifth Circuit.

July 5, 1983.

Rehearing and Rehearing En Banc
Denied Aug. 23, 1983.

Thomas E. Baker, Texas Tech Univ., School of Law, Lubbock, Tex., Court-Appointed, for petitioner-appellant.

Brenda K. Smith, Asst. Atty. Gen., Austin, Tex., for respondent-appellee.

Before THORNBERRY, RUBIN and TATE, Circuit Judges.

THORNBERRY, Circuit Judge:

INTRODUCTION:

Petitioner Conrado Vela, a prisoner in the Texas Department of Corrections, appeals from the district court's denial of his petition for a writ of habeas corpus alleging ineffective assistance of counsel. We conclude that Vela's counsel at his sentencing proceeding was constitutionally deficient, and that counsel's errors resulted in actual and substantial disadvantage to his client's defense. Accordingly, we reverse the district court's judgment and remand with instructions to grant the writ unless the State elects within a reasonable time to retry Vela.

FACTS AND PROCEDURAL HISTORY:

On the evening of July 1, 1973, a dispute erupted between petitioner's brother, Fred Vela, and Kenneth Brown, a clerk at the convenience store where the disturbance occurred. Brown accepted Fred Vela's invitation to "step outside" and settle their differences. As they left the store, they encountered petitioner, Conrado Vela, who became involved in the dispute. Brown punched petitioner in the mouth, knocking him off his feet, then went back into the store. Enraged, petitioner sped home, retrieved his automatic pistol, and returned to the store twenty minutes later. Upon entering the store, he opened fire on Brown. Petitioner fired six to eight times, striking Brown in the back and killing him. Petitioner then returned home, where he was later arrested.

Petitioner [hereinafter Vela] pled guilty in open court to the indictment charging him with murder with malice of Kenneth Brown. The guilty plea was accepted by

the trial court and repeated for the jury. Under the Texas procedure in effect at that time, the jury then had the option of finding Vela guilty of murder with malice aforethought, which carried a punishment of two years to life, or murder without malice aforethought, carrying a term of two to five years imprisonment.[1]

The jury found Vela guilty of murder with malice aforethought and assessed his punishment at 99 years confinement in the Texas Department of Corrections.

Vela shortly thereafter appealed his conviction in state court through court-appointed counsel, urging three points of error: 1) The trial court erred in admitting testimony by Harvey Martin as to Brown's good character, when that was not in issue; 2) The trial court erred in admitting testimony by Brown's widow that was irrelevant, immaterial and calculated solely to prejudice the jury; 3) The trial court erred in failing to grant Vela's motion for a mistrial on the ground that the State's closing argument to the jury was harmful, prejudicial and manifestly improper.

The Texas Court of Criminal Appeals ruled that: 1) Although it was error to admit the prejudicial character testimony, Vela's counsel failed to make a specific objection sufficient to preserve the error for review; 2) Testimony by Brown's widow was completely irrelevant, immaterial, and prejudicial. However, since all but a small portion of this inadmissible testimony was admitted in other testimony without an objection from Vela's counsel, there was no reversible error; 3) Because counsel failed to specifically object to the State's closing argument as outside the record and inflammatory, the alleged error was waived. Unable to reach the merits of any of Vela's asserted points of error because of counsel's failure to preserve them for review by making the proper objections, the Court affirmed Vela's conviction. *Vela v. State,* 516 S.W.2d 176, 176–179 (Tex.Cr.App.1974).

Vela next filed a petition for habeas corpus in the court that had convicted him, alleging that he had been denied his constitutional right to effective assistance of counsel at his sentencing proceeding. The court concluded that Vela had received effective assistance of counsel, and recommended that all relief be denied. The Texas Court of Criminal Appeals then denied Vela's application without written order.

Vela next applied *pro se* for federal habeas corpus relief under 28 U.S.C.A. § 2254 (West 1977), again claiming ineffective assistance of counsel. The magistrate concluded that trial counsel's "inartful" performance "more than adequately represented the Petitioner," and alternatively found that even if counsel's performance was seriously inadequate, Vela had failed to show that the sentencing proceeding was so unfairly prejudicial as a whole to be "fundamentally unfair" in light of the overwhelming evidence of guilt. The district court adopted the magistrate's findings, conclusions and recommendation, and dismissed Vela's petition. Vela appeals that dismissal to this Court.

ANALYSIS:

*Exhaustion Requirement*

We are faced at the outset with the State's contention that Vela's supplemental brief to this Court contains claims which the state habeas court never had the opportunity to consider.[2] The State maintains that we may not entertain these unexhausted claims, and must dismiss Vela's petition as mixed. Specifically, the State alleges that Vela now for the first time claims that his attorney at trial failed to prepare him for questions regarding his guilty plea, neglected to make a large number of objections he should have made, or objected on improper grounds, failed to properly stipulate to evidence, and performed inadequately in his summation. The State does not object to Vela's citation on appeal of the three central errors urged in his state habeas petition as grounds for a finding that counsel was ineffective, *viz.* 1) failure to

---

1. *See* Tex.Penal Code Ann. §§ 1256, 1257, 1257b, & 1257c (Vernon 1970) (repealed 1973).

2. Vela initially appealed *pro se,* but is now represented by counsel on this appeal.

properly object to prejudicial character testimony, 2) failure to properly object to Brown's widow's testimony, and 3) failure to properly object to the State's closing argument.

■ The principle that a state prisoner must normally exhaust all available state remedies before he can apply for federal habeas relief has been established for nearly a century. *See Ex parte Royall*, 117 U.S. 241, 6 S.Ct. 734, 29 L.Ed. 868 (1886). This exhaustion requirement, now codified at 28 U.S.C.A. §§ 2254(b), (c),[3] "serves to minimize friction between our federal and state systems of justice by allowing the State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights." *Duckworth v. Serrano*, 454 U.S. 1, 102 S.Ct. 18, 19, 70 L.Ed.2d 1 (1981); *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 512, 30 L.Ed.2d 438 (1971). *See Rose v. Lundy*, 455 U.S. 509, 102 S.Ct. 1198, 1202–03, 71 L.Ed.2d 379 (1982).

■ Exhaustion is not a jurisdictional prerequisite, but derives from considerations of comity between the state and federal judicial systems.[4] *Felder v. Estelle*, 693 F.2d 549 (5th Cir.1982); *Galtieri v. Wainwright*, 582 F.2d 348, 354 (5th Cir. 1978). The rule that a state prisoner is required to exhaust his state remedies before he applies for federal habeas relief is not graven in stone. *Minor v. Lucas*, 697 F.2d 697 (5th Cir.1983). To have exhausted his state remedies, a habeas petitioner must have fairly presented the substance of his claim to the state courts. *Picard*, 92 S.Ct.

at 513 (1971). It is not enough that petitioner has merely been through the state courts. *Id.* 92 S.Ct. at 512.

■ Normally, the exhaustion requirement is not satisfied if a petitioner presents new legal theories[5] or entirely new factual claims in his petition to the federal court. *Brown v. Estelle*, 701 F.2d 494 (5th Cir. 1983); *Winfrey v. Maggio*, 664 F.2d 550, 553 (5th Cir.1981); *Hart v. Estelle*, 634 F.2d 987, 989 (5th Cir.1981); *Messelt v. State of Alabama*, 595 F.2d 247, 250 (5th Cir.1979).

Here, there is no dispute that the alleged sixth amendment violation and its underlying legal theories were presented to both the state habeas court and the federal district court. Vela argued before both courts that counsel's failure to render reasonably effective assistance deprived him of his sixth amendment right to counsel, as incorporated in the fourteenth amendment due process clause.

The only dispute here is over those instances of alleged substandard conduct cited in this appeal which were not explicitly enumerated in Vela's state habeas petition.

This Court has normally refused to review on habeas entirely new factual claims never presented to the state habeas court. *Brown*, 701 F.2d at 495–96; *Burns v. Estelle*, 695 F.2d 847, 849–50 (5th Cir.1983); *Hart*, 634 F.2d at 989; *Knoxson v. Estelle*, 574 F.2d 1339, 1340 (5th Cir.1978). In *Brown*, petitioner supplemented the record on appeal with three affidavits that corroborated several substantially unsupported

---

**3.** (b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C.A. §§ 2254(b), (c) (West 1977).

**4.** As the Supreme Court noted in *Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), "it would be unseemly in our dual systems of government for a federal district court to upset a state court conviction without an opportunity to the State to correct a constitutional violation." *Id.* 83 S.Ct. at 838 (quoting *Darr v. Burford*, 339 U.S. 200, 70 S.Ct. 587, 590, 94 L.Ed. 761 (1950)).

**5.** Thus, where petitioner advances in federal court an argument based on a legal theory distinct from that relied upon in the state court, he fails to satisfy the exhaustion requirement. *Anderson v. Harless*, —— U.S. ——, 103 S.Ct. 276, 278, 74 L.Ed.2d 3 (1982).

contentions argued before the state court. We affirmed the district court's dismissal of Brown's petition for failure to exhaust available state remedies. In *Hart,* we remanded with directions to dismiss the habeas petition because it presented entirely new medical testimony never considered by the state court. In *Knoxson,* we dismissed the petition because it contained new factual allegations based on documents which became part of the record only after the state habeas court had dismissed the petition. Similarly, in *Burns,* we found that petitioner had failed to exhaust his state remedies when he presented in support of his ineffective assistance of counsel claim entirely new evidence of the existence of a deceased alibi witness whom his attorney arguably should have called to testify at trial. None of this evidence was presented to the state habeas court. As we stated in *Burns:*

> The "substance" of Burns' claim is quite different in his federal petition. For the first time, he now sets forth the scenario involving the alibi witness. Although petitioner concedes that he did not present these allegations in the state proceeding, he argues that he was never given the opportunity to do so. The state record, however, is simply barren of any hint or reference to a purported alibi defense or the existence of any alibi witness. The vague nature of the allegations in his appeal to the Texas Court of Criminal Appeals belies the contention that he had no opportunity to apprise the court of the contentions underlying his claim. In *Hart v. Estelle,* 634 F.2d 987 (5th Cir.1981), this court held that state remedies may not be considered exhausted "where entirely new factual claims are made in support of the writ before the federal court." *Id.* at 989. We believe that the factual bases underlying petitioner's federal claim are significantly different from those underlying his state claim, and therefore, require a finding that Burns has not exhausted his state remedies.

*Burns,* 695 F.2d at 849–50. Our case is quite different from both *Burns* and the other cases discussed above. Here, *all* the instances of ineffective assistance alleged in Vela's supplemental brief to this Court were contained in the trial record reviewed by the state habeas court when it denied Vela's original petition. This petition argued ineffective assistance on the basis of counsel's entire performance. The petition cited the entire record below, singling out for comment certain strikingly prejudicial errors.

In denying Vela's petition, the state habeas court cited a number of instances in which counsel performed his duties well, examples never mentioned in Vela's petition. The state court's findings therefore indicate that the court carried out its own independent analysis of counsel's performance. The transcript and all the documents in this case were transmitted to the Texas Court of Criminal Appeals, which denied the application without written order. We must presume that its consideration of the record, and all the facts contained therein, was no less thorough than that of the state habeas court.

The findings, conclusions, and recommendations of the federal magistrate repeatedly refer to counsel's conduct as a whole. Like the state habeas court, the federal magistrate relied on numerous particulars of counsel's performance that were not raised in Vela's federal habeas petition. The district court order denying habeas relief was premised upon "an independent review of the pleadings, files and records in this case." Recognizing that the federal court's consideration of the entire record is not dispositive of the question of Vela's exhaustion of available state remedies, we nevertheless deem it relevant insofar as it illustrates that court's application of the general rule that counsel's performance is to be evaluated on the basis of "the *totality* of the circumstances in the entire record." *Washington v. Watkins,* 655 F.2d 1346, 1355 (5th Cir.1981), *cert. denied,* 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982) (citations omitted) (emphasis in original). Although the state habeas court in its findings and conclusions made passing reference to the

outdated "farce or mockery of justice" standard of effective assistance of counsel, it, like the federal court, actually applied the "reasonably effective assistance" standard which requires an evaluation of counsel's conduct on the basis of the record as a whole.

■ We recognize that the exhaustion requirement is designed to prevent unnecessary friction between the state and federal systems, and that federal review of state habeas orders entails significant costs. *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 1571, 71 L.Ed.2d 783 (1982). However, although Vela has highlighted in his brief to this Court a number of trial errors that were not specifically mentioned in his *pro se* state habeas petition, all of these errors support the same constitutional claim urged before the state court, and all were readily discernible from the review of the entire record which that court was obligated to carry out. Characterizing these allegations as "unexhausted claims" would require us to find that the state habeas court failed in its duty to evaluate counsel's performance on the basis of the record as a whole. This we are unwilling to do, given that court's citation in its findings of instances drawn from the record in which counsel performed properly. Concluding as we do that the alleged "new facts" are not new at all, we cannot see how our consideration of these same facts in any way undercuts the state court, or creates any friction between the state and federal judicial systems. Accordingly, we hold that Vela has exhausted all available state remedies as required by § 2254(b), (c), and move on to an analysis of the merits of his claim.

*Standard of Review*

■ Although several decisions by this Court suggest that whether a defendant has received effective assistance of counsel is a purely factual question reviewed under the clearly erroneous standard of Fed.R.Civ. Pro. 52(a),[6] we most recently held in *Washington v. Watkins*, 655 F.2d 1346 (5th Cir. 1981), *cert. denied*, 456 U.S. 949, 102 S.Ct. 2021, 72 L.Ed.2d 474 (1982) that:

> Whether a defendant has enjoyed effective assistance of counsel is a mixed question of fact and law. While subsidiary findings of basic, historical fact that the district court has made after it has conducted an evidentiary hearing are subject to review under the clearly erroneous standard of Rule 52(a), the district court's ultimate conclusion as to whether the defendant enjoyed effective assistance of counsel is not subject to review under that standard, and the court of appeals must make an independent evaluation based on those subsidiary findings in determining whether counsel's representation satisfied the qualitative, normative standards dictated by the Sixth and Fourteenth Amendments to the Constitution.

*Watkins*, 655 F.2d at 1354. We have since *Watkins* implicitly recognized this standard in *Ware v. King*, 694 F.2d 89, 92 (5th Cir. 1982), *cert. denied*, 461 U.S. ——, 103 S.Ct. 2092, 77 L.Ed.2d 302 (1983), and applied it explicitly in *Baty v. Balkcom*, 661 F.2d 391, 394 n. 7 (5th Cir. Unit B 1981), *cert. denied*, 456 U.S. 1011, 102 S.Ct. 2307, 73 L.Ed.2d 1308 (1982). The Tenth and Eleventh Circuits have recently cited the *Watkins* standard with approval. *See, e.g., Griffin v. Winans*, 684 F.2d 686, 688 (10th Cir.1982); *Sullivan v. Wainwright*, 695 F.2d 1306, 1308 (11th Cir.1983); *Proffitt v. Wainwright*, 685

---

**6.** *See, e.g., United States v. Hughes*, 635 F.2d 449, 451, 453 (5th Cir.1981); *Pollinzi v. Estelle*, 628 F.2d 417, 418 (5th Cir.1980) (per curiam); *Brown v. Blackburn*, 625 F.2d 35, 36 (1980); *Jones v. Wainwright*, 604 F.2d 414, 416–18 (5th Cir.1979) (per curiam). *But see Harris v. Oliver*, 645 F.2d 327, 330 n. 3 (5th Cir.), *cert. denied*, 454 U.S. 1109, 102 S.Ct. 687, 70 L.Ed.2d 650 (1981); *Norris v. Wainwright*, 588 F.2d 130, 134–35 (5th Cir.), *cert. denied*, 444 U.S. 846, 100 S.Ct. 93, 62 L.Ed.2d 60 (1979); *United*

*States v. Gray*, 565 F.2d 881, 887 & n. 18 (5th Cir.), *cert. denied* 435 U.S. 955, 98 S.Ct. 1587, 55 L.Ed.2d 807 (1978); *Trahan v. Estelle*, 544 F.2d 1305, 1314 (5th Cir.1977) (Goldberg, J., specially concurring); *Mason v. Balcom*, 531 F.2d 717, 721–23 (5th Cir.1976); *Lee v. Hopper*, 499 F.2d 456, 462 (5th Cir.), *cert. denied*, 419 U.S. 1053, 95 S.Ct. 633, 42 L.Ed.2d 650 (1974), all of which determined that counsel's effectiveness was a mixed question of fact and law.

F.2d 1227, 1247 (11th Cir.1982); *Goodwin v. Balkcom,* 684 F.2d 794, 803 (11th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1798, 75 L.Ed.2d 364 (1983). The Supreme Court in *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 1715, 64 L.Ed.2d 333 (1980) held that the question whether attorneys representing co-defendants engaged in multiple representation in violation of the sixth amendment was a mixed question of law and fact. For these reasons, as well as those set forth in our analysis in *Watkins,* 655 F.2d at 1351–54, we conclude that whether counsel rendered effective assistance is a mixed question of law and fact. We are therefore free to substitute our own judgment for that of the district court. *Baker v. Metcalfe,* 633 F.2d 1198, 1201 (5th Cir.), *cert. denied,* 451 U.S. 974, 101 S.Ct. 2055, 68 L.Ed.2d 354 (1981).[7]

*Ineffective Assistance of Counsel*

■■■ The right to counsel guaranteed by the sixth amendment is a fundamental right, *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 2008–10, 32 L.Ed.2d 530 (1972), and applies through the fourteenth amendment to the states. *Cuyler,* 100 S.Ct. at 1715. This vital component of our judicial system includes within its broad compass the right to a minimal quality of counsel, *Gandy v. Alabama,* 569 F.2d 1318, 1320 (5th Cir.1978), defined as the right to effective assistance of counsel. *McMann v. Richardson,* 397 U.S. 759, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970). This right is present at every stage of a criminal proceeding where substantial rights of a criminal accused may be affected, and consequently extends to sentencing proceedings in criminal cases. *Mempa v. Ray,* 389 U.S. 128, 88 S.Ct. 254, 257, 19 L.Ed.2d 336 (1967). A plea of guilty does not strip a defendant of his right to effective assistance of counsel. *Woodward v. Beto,* 447 F.2d 103, 104 (5th Cir.), *cert. denied,* 404 U.S. 957, 92 S.Ct. 325, 30 L.Ed.2d 275 (1971).

■■■ The standard governing counsel's effectiveness under the sixth amendment is a straightforward one.

In this circuit, the standard for constitutionally effective assistance of counsel is "not errorless counsel, and not counsel judged ineffective by hindsight, but counsel reasonably likely to render *and rendering* reasonably effective assistance." *Herring v. Estelle,* 491 F.2d 125, 127 (5th Cir.1974) (quoting *MacKenna v. Ellis,* 280 F.2d 592, 599 (5th Cir.1960), *adhered to in pertinent part on rehearing en banc,* 289 F.2d 928 (5th Cir.), *cert. denied,* 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed.2d 78 (1961) (emphasis by *MacKenna* panel)). "[T]he methodology for applying this standard involves an inquiry into the actual performance of counsel conducting the defense and a determination of whether reasonably effective assistance was rendered based on the *totality* of circumstances in the entire record." *Washington v. Estelle,* 648 F.2d 276, 279 (5th Cir.) [*cert. denied,* 454 U.S. 899, 102 S.Ct. 402, 70 L.Ed.2d 216 (1981)] (emphasis in original).

*Watkins,* 655 F.2d at 1355. *See also Baldwin v. Maggio,* 704 F.2d 1325, 1329 (5th Cir.1983); *Ross v. Estelle,* 694 F.2d 1008, 1012 (5th Cir.1983). Although *Watkins* was a death penalty case, the same standard applies in imprisonment cases. *See Hardin v. Wainwright,* 678 F.2d 589, 592 (5th Cir. 1982); *Daniels v. Maggio,* 669 F.2d 1075, 1077 (5th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 295, 74 L.Ed.2d 278 (1982).

We begin our consideration of counsel's performance at trial by examining the Texas Court of Criminal Appeals' decision denying Vela's appeal. *Vela v. State,* 516 S.W.2d 176 (Tex.Ct.Cr.App.1974).

■■■ In his appeal, Vela objected to the admission of testimony by Harvey Martin

---

7. The broad scope of our review does not, of course, extend to the state court's findings of subsidiary fact, which are entitled to a presumption of correctness under 28 U.S.C.A. § 2254(d). *Sumner v. Mata,* 455 U.S. 591, 102 S.Ct. 1303, 1306–07, 71 L.Ed.2d 480 (1982).

Here, these subsidiary findings are not in dispute. *See also Goodwin,* 684 F.2d at 804 (acceptance of state court's factual findings does not limit appellate court's examination of state transcript for counsel's errors).

as to Brown's good character. Martin, a well-known professional football player, testified that Brown was a man of kind and inoffensive character, that he had never seen Brown get in a fight, and that Brown intended upon his graduation from college to go into social work with children. Because Vela never sought to justify murdering Brown, but pleaded guilty to the charge, and because the record contained no evidence of any threat by Brown against Vela before the dispute erupted, nor any evidence portraying Brown as a violent or dangerous person, the Texas Court of Criminal Appeals concluded that Martin's testimony was improperly admitted. Unfortunately, counsel made only a general objection to the admission of this testimony, failing to preserve the error for review.

Although it was error to admit such prejudicial testimony, the appellant has waived the right to complain on appeal for failure to make the proper specific objection. From the record, the only objection made in the trial court was that the testimony was irrelevant, immaterial, and inflammatory. This objection was made prior to any testimony actually given. At no time did appellant ever make an objection to this testimony on the grounds that it was improper character evidence; nor was any motion to strike such testimony as being irrelevant made after the witness testified.

A general objection preserves nothing for review and is not sufficient to apprise the trial court of the complaint urged. *It is a long established rule that an objection to the admission of evidence must be specific and must state the grounds of the objection.* Failing to meet this requirement, such a general objection will not be considered for review by this Court.

*Vela,* 516 S.W.2d at 178 (emphasis added) (citations omitted). Counsel's error here was fundamental, revealing ignorance of one of the most basic rules of Texas procedure; an objection must be specific to preserve the error for review.

In his direct appeal, Vela also argued that the admission of Mrs. Brown's testimony constituted reversible error. We reproduce below the Court of Criminal Appeals' disposition of that claim.

From a close examination of [Mrs. Brown's] testimony, it is apparent that it was completely irrelevant, immaterial, and prejudicial. She testified that she had one child, age three, and that the deceased at the time of his death was working at two jobs, attending college, and playing on the championship football team. She also testified that he had aspirations to play professional football, sang in the church choir, was an usher in the church, and was a social worker for an organization benefitting the underprivileged children of all races. *There can be no doubt that this testimony had no bearing whatsoever on any material issue in the case and its sole purpose was to inflame the minds of the jury.* The State, by its own concession, admits that it was not even intended to be good character evidence of the deceased. This Court has consistently held evidence of this type to be inadmissible.

Even though the prejudicial evidence admitted through Mrs. Brown's testimony *is far more prejudicial than any case cited above,* all except the portion dealing with the deceased's church and social activities was admitted in other testimony without objection from appellant. This Court has held that admission of improper evidence is not reversible error if the same facts are proven by other testimony not objected to. . . . The remaining portion of her testimony which was not proven from other unobjected to testimony, standing alone, does not rise to sufficient magnitude to warrant a reversal. . . . Appellant's second ground of error is overruled.

*Vela,* 516 S.W.2d at 179 (emphasis added) (citations omitted). Although the court did not reach the reversible error issue, we note that it did state in dictum that the testimony admitted was far more prejudicial than that found in any of the cases cited.[8] De-

---

8. The cases cited as involving testimony less prejudicial than that in the present case were:

*Chism v. State,* 470 S.W.2d 673 (Tex.Cr.App.

fendants' convictions were reversed in several of those cases. *See Cadenhead, Elizondo, Ainsworth, Faulkner, supra* note 8. In the great majority of the remaining eight cases in which the court, for one reason or another, failed to reach the question of reversible error, it nevertheless found the evidence inadmissible. We agree with the Texas Court of Criminal Appeals that Mrs. Brown's testimony surpasses comparable testimony in all of the cases cited, both in its irrelevance, and its prejudicial effect. However, the question whether this testimony constituted reversible error in our case is not before us, and we need not decide it. We note only that counsel's error here was fundamental. The evidence in question was admitted solely for the purpose of inflaming the jury. The state itself admitted that it was not intended to be good character evidence of the deceased. Counsel's failure to object to similar testimony later in the trial had the same effect for purposes of subsequent review as would a failure to object to this testimony, and was just as serious.

Vela's third point of error alleged that the prosecutor's jury argument was essentially an appeal to emotion, and was therefore improper. The Texas Court of Criminal Appeals did not reach this ground of error because counsel failed to specifically object that the argument was outside the record and inflammatory, but instead simply moved for a mistrial. The court noted in dictum that since an instruction to the jury to disregard would have been sufficient to cure the alleged error, a motion for a mistrial was inappropriate. Counsel's error here therefore does not appear quite as serious as the first two errors we have examined, since the jury would have heard the improper appeal anyway. The fact remains, however, that because of counsel's error, no curative instruction was given.

Quite apart from any prejudice Vela may have suffered as a result of these errors, an issue we address *infra*, it is clear that in

1971) (not reversible error to admit testimony of deceased's peaceable character where opposite has been testified to on behalf of defense, and no timely objection made); *Whan v. State*, 438 S.W.2d 918 (Tex.Cr.App.1969) *rev'd on other grounds*, 403 U.S. 946, 91 S.Ct. 2281, 29 L.Ed.2d 856 (1971) (not reversible error to allow crippled wife of deceased to testify without first allowing defense counsel to perfect a bill of exception); *Salazar v. State*, 397 S.W.2d 220 (Tex.Cr.App.1965) (admission of testimony that deceased was the father of eight children not reversible error where objection not timely made); *Cadenhead v. State*, 369 S.W.2d 44 (Tex.Cr.App.1963) (reversible error to admit testimony by mother of deceased that he was sole support of her and her husband); *Orozco v. State*, 164 Tex.Cr.R. 630, 301 S.W.2d 634 (1957) (admission of testimony by deceased's widow as to number and ages of her children not reversible error because same facts proved by evidence not objected to); *Cavarrubio v. State*, 160 Tex.Cr.R. 40, 267 S.W.2d 417 (1954) (admission of testimony that deceased had a wife and two small children insufficiently prejudicial in light of other evidence to constitute reversible error); *Eckels v. State*, 153 Tex.Cr.R. 402, 220 S.W.2d 175 (1949) (although it was error to admit testimony that deceased had a wife and five children aged nine months to fourteen years, it was not reversible error where defendant himself elicited similar testimony on cross-examination); *Elizondo v. State*, 130 Tex.Cr.R. 393, 94 S.W.2d 457 (1936) (prosecutor asked defendant: "How many children did you make orphans when you killed [decedent]?" and introduced evidence that the decedent had two children. Prosecutor then asked witness whether defendant was known as a dangerous man in those parts, and whether witness knew that defendant had shot a number of men. Both questions were held to constitute reversible error.); *Ainsworth v. State*, 122 Tex.Cr.R. 483, 56 S.W.2d 457 (1933) (reversible error to allow son of deceased to testify that his mother was left with eight children aged six months to eighteen years, and that they were poverty-stricken and had to pick cotton for a living); *Goolsby v. State*, 112 Tex. Cr.R. 216, 15 S.W.2d 1052 (1929) (testimony that deceased's wife and baby left without support as a result of defendant's act inadmissible, and led jury to enhance punishment, however, not reversible error where substantially the same testimony was later given without objection); *Allen v. State*, 102 Tex.Cr.R. 441, 278 S.W. 201 (1925) (admission of testimony that deceased left behind wife and five children aged six to sixteen irrelevant and immaterial, and calculated solely to arouse jury's sympathy and prejudice them against defendant; remanded for new trial on other grounds); *Faulkner v. State*, 43 Tex.Cr.R. 441, 65 S.W. 1093 (1901) (admission of testimony as to number and ages of deceased's children reversible error, since it was solely intended to excite the sympathy of the jury and prejudice them against defendant).

each of these instances, counsel failed to do what reasonably should be expected of every Texas attorney representing criminal defendants. He did not follow the most elementary of blackletter rules of procedure found in bar review materials, beginner trial manuals and basic books on Texas procedure: (1) avoid general objections; (2) specify the particular ground of an objection; and (3) move to strike the improper testimony and ask for an appropriate instruction, or, when appropriate, a mistrial.[9]

Counsel failed to follow these rules on numerous other occasions, and committed several other serious errors as well. When counsel saw fit to make an objection, he did not insist on a ruling to preserve the point. On at least four occasions counsel's hearsay objection was made only after the jury had heard the question answered. He failed to object to the improper and prejudicial testimony of William Berry, establishing Brown's good character, much as he had done when the prosecutor examined Harvey Martin. Counsel missed numerous objections regarding evidentiary foundations, leading questions, hearsay, improper summation of testimony, questions assuming facts not in evidence, and relevancy. On at least four occasions, the court had to intervene and do counsel's job for him. In his cross-examination of the State's witnesses, counsel asked trivial questions, and actually bolstered their testimony. In his defense presentation, counsel spent most of his time trying to convince the sentencing jury, which had just heard Vela plead guilty to

murder, that Vela enjoyed a good reputation for being peaceable and law-abiding, despite what the magistrate called "uncontroverted testimony which precluded any theory of justifiable homicide." Some of the same witnesses who testified to Vela's peaceable nature also testified to his rage at the time of the murder. When Vela himself took the stand, his lack of preparation became immediately evident. At one point, he actually volunteered the information that he expected to receive a life sentence. The prosecutor had a field day with Vela.[10]

"The sentencing stage of any case, regardless of the potential punishment, is the time at which for many defendants the most important services of the entire proceeding can be performed.'" *Stanley v. Zant,* 697 F.2d 955, 963 (11th Cir.1983) (citations omitted). Where the potential punishment is 99 years imprisonment, the sentencing proceeding takes on added importance. While the legal standard of effective representation does not change from case to case, this does not mean that the severity of the sentence faced by a criminal defendant should not be considered in determining whether counsel's performance meets this standard. *Watkins,* 655 F.2d at 1356. "[T]he number, nature, and seriousness of the charges against the defendant are all part of the 'totality of the circumstances in the entire record' that must be considered in the effective assistance calculus." *Id.* See *Stanley,* 697 F.2d at 962–63. Here,

9. J. Bobo, *Advanced Criminal Law Course, Problems for Criminal Law Practitioners and Effective Assistance of Counsel* F–16 (1981) (Professional Development Program, State Bar of Texas); S. Clinton, *Criminal Practice Update—Ethical and Effective Counsel* .8–14 (1981) (Lubbock Criminal Defense Lawyers Association); 2 D. Crump, *Advanced Criminal Law Course, Opening Statements and Jury Arguments* Y–14, Y–15 (1981) (Professional Development Program State Bar of Texas); W. Dorsaneo & D. Crump, *Texas Civil Procedure: Trial and Appellate Practice* 70–74, 80, 81 (1981); W. Finkelstein, *Texas Bar Review—Texas Civil Procedure* 39–43 (1981); W. Finkelstein, *Texas Bar Review—Texas Criminal Procedure* 39–40 (1981); P. McLung, *Lawyers Handbook for Texas Criminal Practice* 89–93,

412–14 (rev. ed. 1982); A. McColl, *Criminal Practice Update Extraneous Offenses* (1982) (Lubbock Criminal Defense Lawyers Association); Texas Bar Review, *B.R.I. Bar Review—Texas Criminal Procedure* 16 (1982).

10. Q (By Mr. Prather) [State's attorney] Basically what you want this jury to do is give you a little ol' two years in the penitentiary for taking a man's life, is that right?

A No, I don't want them to do that because I know I am not going to get two years.
THE COURT: Let's hurry along, counsel.
A I know what the sentence is going to be.
Q What is it going to be?
A Probably life.
MR. PRATHER: Pass the witness.

Vela was charged with perhaps the most serious of offenses; murder. "Unless a defendant charged with a serious offense has counsel able to invoke the procedural and substantive safeguards that distinguish our system of justice, a serious risk of injustice infects the trial itself." *Cuyler,* 100 S.Ct. at 1715.

Vela does not claim that he was denied counsel reasonably likely to render effective assistance, rather, he claims that he was denied counsel *rendering* effective assistance. Accordingly, we evaluate counsel's performance "from the perspective of counsel, taking into account all of the circumstances of the case, but only as those circumstances were known to him at the time in question." *Watkins,* 655 F.2d at 1356. Here, we do not judge counsel's performance with the benefit of 20/20 hindsight, secure in the possession of new evidence which, had it been known to counsel, would have caused him to act differently. We assess his performance on the basis of the facts known to him, and the rules of law and procedure he is held to know as an attorney representing defendants in criminal proceedings.

It is Vela, of course, who bears the burden of proving ineffective assistance of counsel by a preponderance of the evidence. *Hayes v. Maggio,* 699 F.2d 198, 201–02 (5th Cir.1983); *Washington v. Strickland,* 693 F.2d 1243, 1250 (5th Cir. Unit B 1982) (*en banc*), *cert. granted,* 462 U.S. ——, 103 S.Ct. 2451, 77 L.Ed.2d 1332 (1983); *Ward v. United States,* 694 F.2d 654, 664 (11th Cir.1983); *Adams v. Balkcom,* 688 F.2d 734, 738 (11th Cir.1982). In some cases, a single critical error may render counsel's performance constitutionally defective. *Nero v. Blackburn,* 597 F.2d 991, 994 (5th Cir.1979).

Here, Vela has identified not one error, but many, several of which were sufficiently grave to preclude the review of serious claims on direct appeal. We find that Vela has met his burden, and conclude that counsel's performance in this proceeding fell below the range of competency generally demanded of attorneys in crimi-

nal cases. *Young v. Zant,* 677 F.2d 792 at 798 (11th Cir.1982). Assessing counsel's performance on the basis of the totality of the record, we hold that counsel in this proceeding did not render reasonably effective assistance.

*Actual and Substantial Disadvantage*

This does not, of course, complete our inquiry. In *Strickland,* we stated that once it is determined that defendant's right to effective assistance of counsel was violated, a court

> should then separately determine whether petitioner suffered prejudice of sufficient magnitude to warrant granting the writ of habeas corpus. We decide that the petitioner has the burden of persuasion to demonstrate that the ineffective assistance created not only "a *possibility* of prejudice, but that [it] worked to his *actual* and substantial disadvantage." If he successfully satisfies this burden, the writ must be granted unless the state proves that counsel's ineffectiveness was harmless beyond a reasonable doubt.

*Strickland,* 693 F.2d at 1258 (citations omitted) (emphasis in original). In *Strickland,* the *en banc* Court rejected a *per se* rule of prejudice in ineffective assistance of counsel cases. It also rejected an outcome-determinative test as setting too high a standard, and refused to adopt the rule proposed by the panel majority, whereby petitioner had only to show that but for counsel's ineffectiveness the trial, but not necessarily its outcome, would have been altered in a way helpful to the defense. *Id.* at 1260–62.

Vela pled guilty to murder. The jury was given the broadest range of punishment options, from two years to life. Defense counsel allowed the State to introduce evidence on an issue that the Texas Court of Criminal Appeals concluded "was not presented." *Vela,* 516 S.W.2d at 178. Defense counsel allowed the State to encourage the jury to set punishment based on the goodness of the murder victim. Under the Texas rules governing trial procedure, evidence of this type is inadmissible precisely

because of its prejudicial effect. The Texas Court of Criminal Appeals characterized Mrs. Brown's testimony as "completely irrelevant, immaterial and prejudicial," concluding that "[t]here can be no doubt that this testimony had no bearing whatsoever on any material issue in the case and its sole purpose was to inflame the minds of the jury." *Vela,* 516 F.2d at 179. The court also found this evidence to be far more prejudicial than comparable evidence in any of the twelve Texas cases it examined.

■■■ Vela was thrice prejudiced. First, defense counsel allowed the prejudicial evidence on Brown's good character to be introduced. Second, by failing to object to it and ask for a curative instruction, counsel allowed the jury to consider it as if it had been material, probative evidence, relevant to the issue of Vela's sentence. Third, defense counsel's failure to object waived the issue for consideration on direct appeal. We have no difficulty concluding that counsel's ineffectiveness "resulted in actual and substantial disadvantage to the cause of [Vela's] defense." *Strickland,* 693 F.2d at 1262. Indeed, given the extremely prejudicial effect of this testimony, we fail to see how anyone could conclude otherwise. Faced with the task of assessing Vela's punishment, the jury was informed that the man he had killed was kind, inoffensive, a star athlete, an usher in his church, a member of its choir, a social worker with underprivileged children of all races, a college student holding down two jobs while he attended classes and played on the championship football team, and the father of a three-year-old child. The truth of these statements is, of course, not in issue; the point is that they are irrelevant to the severity of Vela's sentence, and should not have been considered by the jury.

*Harmless Error*

■■■ The State has failed to carry its burden of showing that the admission of this testimony was harmless beyond a reasonable doubt. *Chapman v. California,* 386 U.S. 18, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967). It is not enough to say that since the jury could have assessed a life sentence without having heard the prejudicial testimony, the admission of this testimony was harmless. The State dropped a skunk into the jury box. Defense counsel made no serious effort to either identify it as a skunk, have it removed, or have the jury instructed to disregard its presence. We cannot in reason conclude that the jury did not consider this inadmissible, improper, highly prejudicial testimony in determining Vela's sentence. The sentencing process consists of weighing mitigating and aggravating factors, and making adjustments in the severity of the sentence consistent with this calculus. Each item of testimony has an incremental effect; large segments of highly prejudicial, inadmissible testimony have a considerable effect, skewing the calculus and invalidating the result reached.

■■■ Under Texas law, where the jury assesses punishment, an appellate court may not reverse and remand solely for a reassessment of punishment. *Ex parte Brown,* 575 S.W.2d 517, 518 (Tex.Cr.App. 1979). Rather, petitioner is entitled to a new trial on the issue of guilt as well as punishment. *Ex parte Elizalde,* 594 S.W.2d 105, 106 (Tex.Cr.App.1980) (en banc).

Accordingly, we REVERSE the district court's judgment and REMAND with instructions to grant the writ of habeas corpus unless the State elects within a reasonable time to retry Vela. *McDonald v. Estelle,* 536 F.2d 667, 672 (5th Cir.1976), *vacated on other grounds,* 433 U.S. 904, 97 S.Ct. 2967, 53 L.Ed.2d 1088 (1977).